David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D,
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                            PLAINTIFF

VS.                         Case 4:23-cv-00321-DMR

JOHN DOE, d.b.a. SIDALPHA                                  DEFENDANTS

### SECOND MOTION FOR ISSUANCE OF SUBPOENA DUCES TECUM

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Second Motion for Issuance of Subpoena Duces Tecum in the above-styled action.

1.     The John Doe Defendant's name and address are both unknown to me at this time. However, the defendant owns and operates the YouTube channel @SidAlpha, which is a member of the YouTube Partner Program. This is evidenced by the fact that there is an option to "join" his channel as a channel member on his channel's page:



2.     This option is only available to people who are members of the YouTube Partner Program.

3.     Because he is a member of the YouTube Partner Program, his legal name and current address are both on file with YouTube LLC and Google LLC, so they can send him the payments

he has earned each month, not just through the aforementioned channel memberships, but also through ad revenue, super chats, super thanks, and other revenue sources.

4. Therefore, I humbly ask the Court to issue a subpoena to YouTube LLC, ordering them to provide me with the legal name and address of the owner and operator of the YouTube channel located at the url of www.youtube.com/@sidalpha, so that this defendant can be served with process.

5. A proposed subpoena is hereby being attached as **Exhibit A** for the Court's convenience.

**Hard Drive Prods., Inc. v. Does 1-90, No. C11-03825 HRL,**

**2012 WL 1094653, at \*2 (N.D. Cal. Mar. 30, 2012)**

6. In the Court's order denying the first incarnation of this motion (Dkt. 10), the Court cited the unpublished case of Hard Drive Prods., Inc. v. Does 1-90, referring to four factors that needed to be addressed before a subpoena could issue to identify a Doe defendant. Those factors are "whether (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible."

7. Per the Court's instructions, I will address each one in turn.

**The defendant is a real person or entity who could be sued**

8. SidAlpha is absolutely a real person. He makes YouTube videos on a regular basis. You can hear his voice during these videos. This voice is not a computer voice. In fact, in a few of his videos, he even shows his face. Here is just one example of a video where his face is shown: https://youtu.be/LxB9gZThwEQ?t=10. This video was published in 2016, several years before the rise of deepfake technology, so this face footage is not a deepfake. Therefore, it is safe to assume that this element of the Hard Drive Prods precedent is handily satisfied.

**Previous steps taken to locate the elusive defendant**

9. As I pointed out in Dkt. 11, I made reasonable efforts to locate SidAlpha's address using

Spokeo and BeenVerified. However, I cannot say with 100% certainty that the search results are accurate.

10. The only other thing I can even think to do to try and locate the defendant on my own is to hire a private investigator[1]. But that would cost a lot of money[2], and as the Court can clearly see from Dkt. 2, that would likely be cost-prohibitive to me.

11. For this reason, I believe this second element is also satisfied.

**Reasonable likelihood of being able to identify the defendant such that service of process would be possible**

12. Much more so than using Spokeo or BeenVerified, subpoenaing the defendant's name and address from YouTube is a surefire way to obtain accurate and up to date information. SidAlpha is a member of the YouTube Partner Program. This means that his legal name and current address are on file with YouTube, so they can send his payments he has earned each month through ad revenue, super chats, super thanks, channel memberships, etc.

13. SidAlpha almost certainly keeps his address up to date with YouTube for this exact reason. Therefore, whatever legal name and address YouTube provides is almost certain to be the correct, current one.

**Whether the complaint can withstand a motion to dismiss**

14. The Court has made it very clear that it plans to screen my complaint under 28 USC § 1915 for sufficiency of pleading. That statutory review process carries the exact same legal threshold as a motion to dismiss: The Court must, subject to a handful of few-and-far-between exceptions, accept all factual allegations in the complaint as true and in a light most favorable to the plaintiff. Therefore, if the Complaint can pass a § 1915 review, it can likely pass a motion to dismiss as well. Of course, the Defendant would have the right to weigh in on the latter, but that is not something the Court can account for when issuing a pre-service subpoena.

15. That being said, I am suing for ten different counts of slander. If even *one count* of slander is found by the Court survive a § 1915 review, then I have the right to my day in court for that one count, and therefore, I need to subpoena YouTube to be able to locate the defendant.

---

1 Such as this one: https://rexxfield.com/
2 For example, Rexxfield charges a minimum upfront fee of $5,000 for their services. See rexxfield.com/contact/.

<u>Defamation by omission</u>

16.     Three out of the ten of the slanders I am suing over (namely, Defamation #3, #9, and #10) center around SidAlpha lying by omission. However, lying by omission is absolutely a valid grounds for holding someone liable for defamation.

(a)     See Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) (finding that the plaintiff stated a claim upon which relief can be granted when the news station lied by omission by failing to disclose that the underlying sexual abuse occurred between two four-year-old boys, thereby leading audiences to believe that the daycare workers were directly and personally engaging in the sexual abuse).

(b)     See also Morse v. Fusto, 804 F.3d 538, 549 n.8 (2d Cir. 2015) ("[T]he law of libel has long recognized that omissions alone can render a statement false").

(c)     See also Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 387 (8th Cir. 1996) ("[A] defendant does not avoid liability by simply establishing the truth of the individual statement(s); rather, the defendant must also defend ... the omission of certain facts").

(d)     See also Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) (actionable libel found where a newspaper selectively published that the Plaintiff was with her assailant's husband, implying they were having an affair, when in fact the two were meeting with multiple other people in an entirely non-sexual setting).

(e)     See also Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768, 776 (2005) (Washington Supreme Court holding that "In a defamation by omission case, the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts," thereby acknowledging that defamation by omission is indeed a valid legal theory to recovery).

(f)     See also Diesen v. Hessburg, 437 N.W .2d 705, 709 (Minn. Ct. App. 1989) ("There may be defamation … where known facts are omitted, which could have changed the defamatory implication of the article").

(g)     See also Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions"

Notre Dame Law Review, 97(1), 351–355. scholarship.law.nd.edu/cgi/viewcontent.cgi?article=4990&context=ndlr

17. Even in California – whose case law is binding in this case, should the Court accept that it has personal jurisdiction – lying by omission is actionable as defamation.

   (a) See Weller v. American Broadcasting Companies, Inc., 232 Cal. App. 3D 991 (1991). In that case, the defense argued on appeal that the judge committed reversible error when it failed to instruct the jury that "omissions of minor details are not sufficient to amount to falsity." See id at 1009. But the defense never argued that lying by omission, generally speaking, cannot be the basis for a tort of defamation. In fact, by advocating for this jury instruction, the defense seems to concede that it is well settled law in California that "major" omissions (such as, in Defamation #10, failing to disclose that I was exonerated of my criminal charges over a decade ago) are indeed actionable.

   (b) See also Okun v. Superior Court, 629 P. 2d 1369 (1981), which referenced, on numerous occasions, the allegations of "omission of material facts" in support of each count of libel. While the complaint was found to fail to state a claim for various reasons, the fact lying by omission is not defamation in California was not one of them.

18. The closest I was able to find to a case law suggesting that defamation by omission is not actionable in California was the case of Paterno v. Superior Court, 163 Cal. App. 4th 1342 (2008). However, that case was clearly only setting precedent for media defendants and public figure plaintiffs. See…

   (a) Id at 1345 ("Here we consider whether a plaintiff in a defamation action **_subject to the constitutional malice standard_** established the requisite 'good cause' to conduct discovery") (emphasis added).

   (b) Id at 1349 ("The **_constitutional malice standard_** under New York Times Co. v. Sullivan protects freedom of expression by requiring public figure plaintiffs who bring defamation actions to plead and prove falsehood") (citations omitted and emphasis added).

   (c) Id at 1352 ("**_Media defendants_** are liable for calculated falsehoods, not for their failure to achieve some undefined level of objectivity") (emphasis added).

19.     Those types of defamation cases are already held to a higher standard than most other defamation cases, due to the Supreme Court precedents of New York Times Co. v. Sullivan, 376 US 254 (1964) and Philadelphia Newspapers, Inc. v. Hepps, 475 US 767 (1986).

20.     However, that is clearly not applicable in this case. As I explain in ¶¶ 127-129 of the Complaint, I am not a public figure, so the precedent of NYT v. Sullivan is not applicable here. Meanwhile, as I explain in ¶ 130, this is not an issue of public concern, but was instead just a legal dispute between two sets of insignificant people on the Internet, akin to two neighbors having a dispute about land rights, not something the general public would take a great interest in until SidAlpha sensationalized it.

21.     Moreover, SidAlpha is not a "media defendant." He is not a professional journalist. He does not work for a news station, newspaper, or news magazine. There is no "code of journalism ethics" to which he is bound. If there was a riot in his city, the police would not permit him to stay because he's "the press." He's just a guy with a YouTube channel, nothing more, nothing less. That does not make him a "media defendant" any more so than me having the same thing makes me a "public figure." In fact, he even publicly admits to as much in this clip: https://www.youtube.com/clip/UgkxfHeMyTC78ImzE1d_PiapVm74-rEJEi-n. While this disclaimer is only to acknowledge that he is not an attorney, the fact that he admits he is "merely a mook with a mic" also means he is not a proper "media defendant" either.

22.     Therefore, the precedent of PA Newspapers v. Hepps is not applicable either.

23.     Therefore, just as the cases of NY Times v. Sullivan and PA Newspapers v. Hepps are not applicable, so too is Paterno – a case which was expressly predicated on the applicability of those two cases – also inapposite here.

24.     Another major difference between that case and this one is the fact that the Plaintiff had an equally powerful platform with which to publish his own side of the story, but simply felt that such proactivity was beneath him. The Plaintiff was the owner of a newspaper that was just as widely distributed as the defendant's newspaper. As such, the Court noted "If Paterno's statements require further explanation, Ampersand, McCaw, its lawyers, public relations experts, and crisis managers, are free to provide them. Ampersand, as the publisher of Santa Barbara's

largest circulation daily newspaper, has ample access to the channels of effective communication." See Id at 1353.

25.     By contrast, the vast majority of defamation cases involve individual, insignificant plaintiffs such as myself. The Supreme Court has acknowledged that the reputational injury inflicted on people like me "cannot easily be repaired by counterspeech, however persuasive or effective." See Hustler Magazine, Inc. v. Falwell, 485 US 46, 52 (1988). See also Gertz v. Robert Welch, Inc., 418 US 323, 344 n. 9 (1974) ("[A]n opportunity for rebuttal seldom suffices to undo harm of defamatory falsehood. Indeed, the law of defamation is rooted in our experience that the truth rarely catches up with a lie"). In fact, the presumption of opportunity for rebuttal as a means of mitigating the reputational harm caused is one of the biggest reasons why public figure plaintiffs have a much higher standard to meet in the first place! See Gertz at 344 ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater"). Furthermore, the Supreme Court "has not ... embraced the general proposition that a wrong may be done if it can be undone." See Stanley v. Illinois, 405 US 645, 647 (1972). They further held that, when the plaintiff "does not have the means at hand promptly to erase the adverse consequences," that is a factor that weighs in favor of proactively granting the plaintiff judicial relief. See id at 647.

26.     The size of my YouTube channel, and therefore my reach, and therefore my ability to properly correct any misinformation that anyone else spreads about me under my own power, is absolutely dwarfed by the size of SidAlpha's channel and reach. I have fewer than 3,500 subscribers as of the time of this writing, whereas SidAlpha has over 119,000 subscribers. I simply do not have the means to repair my reputation on my own; it has to be SidAlpha who publishes the correction I requested in ¶¶ 154-159 of the Complaint. Nothing else will do. That alone creates a world of difference between the Paterno case and this one.

27.     But even barring that, we mustn't forget that the three counts of defamation I am suing over that involve lies by omission – Defamation #3, #9, and #10 – all involve SidAlpha either

*knowingly* omitting exculpatory facts, or (as I explain in ¶ 86 of the Complaint) outright refusing to entertain my attempts to bring exculpatory facts to his attention. In Paterno, the defendant did not publish Paterno's reasons for dropping the protective order case because they, honestly and in good faith, did not see those reasons as being all that important in the grand scheme of things. But in Defamation #3 in this case, SidAlpha admits over private email (as I explain in ¶¶ 62-63 of the Complaint) that he knowingly and maliciously omitted the fact that xArtemisWolf had created a new channel less than 24 hours after her first one was terminated[3] *specifically because* he knew that including it would significantly water down the reputational injury I suffered as a result of spreading that story. This should still qualify as the sort of "calculated falsehood" that the Paterno court calls for.

28. The same is also true for Defamation #9. Unlike Defamation #3, SidAlpha at least paid lip service to the exculpatory facts, but he significantly downplayed them. The net result was to portray me as some overgrown manchild having an extreme overreaction to qualitatively and quantitatively insignificant half-rassment, when in fact, nothing could be farther from the truth and he knows it. Bear in mind that this video was scripted, word for word; he was not merely speaking off the top of his head, but had planned this smear video weeks in advance (even announcing on Twitter, as early as mid January that year, that he was planning on making this smear video about me), and carefully considered every word in the script. In other words, his carefully-constructing downplaying of my provokers' behavior towards me, and his carefully-constructed up-playing of my reactions to the provocation, absolutely qualify as "calculated falsehoods."

29. Defamation #10 is the only count of defamation where SidAlpha has even a scintilla of benefit of the doubt in this regard. As the records of that criminal case have been sealed from the public, SidAlpha obviously could not have found the exculpatory facts mentioned in ¶¶ 116-119 of the Complaint through his own research. However, as I explain in ¶ 122 of the Complaint (referencing ¶ 86 of same), his refusal to allow me to bring these exculpatory facts to his

---

3  As of the time of this writing, the link in the Complaint no longer works. However, that is because, in April of 2023, xArtemisWolf had deleted her second channel of her own accord, this time for reasons that have nothing to do with me.

attention still constitutes "burying his head in the sand" and therefore constitutes the sort of "reckless disregard to the truth" that is also grounds for a finding of "actual malice" in defamation law. Therefore, it should still be considered a "calculated falsehood" all the same.

30.     Even if the Court finds the arguments of ¶¶ 25-28 above to be unlikely, the Court cannot make that finding at this stage. At the pleading stage (which encompasses both § 1915 reviews and Rule 12(b) motions to dismiss), the Court must view the allegations in the Complaint, not only as true, but also "in the light most favorable to the Plaintiff" See Does 1-6 v. Reddit, Inc., 51 F. 4th 1137, 1140 (9th Cir. 2022). This means that, unless the arguments contained in ¶¶ 25-28 are wholly irreconcilable with the allegations in the Complaint (which they are not), the Court must assume that these allegations (especially the ones regarding SidAlpha's mental state) are true. For example, in regards to ¶ 86 of the Complaint, the Court must start from the assumption that SidAlpha subjectively knew that there was a 100% chance that I would be able to produce plainly exculpatory evidence (such as the kind mentioned in ¶¶ 116-119 of the Complaint) if given the chance to and refused to hear me out specifically in order to intentionally and maliciously bury his head in the sand, and then work from there. Since the court must assume that at this stage, the complaint absolutely can survive a motion to dismiss.

Defamation by Implication

31.     Even if, in spite of all of this, the Court still finds Paterno to be controlling, and therefore holds that defamation by **_omission_** is not actionable, it is still overwhelming precedent in California that defamation by **_implication_** is actionable. See Weller v. American Broadcasting Companies, Inc., 232 Cal. App. 3d 991, 1004 n. 11 (1991) (citing Law of Torts § 116, Supp 1988) ("If the defendant ... creates a defamatory implication, he may be held responsible for the defamatory implication, even though the particular facts are correct. Therefore, it is the defamatory *implication* — not the underlying assertions giving rise to the implication — which must be examined to discern whether the statements are entitled to full constitutional protection" (citations and quotations omitted; emphasis in original). See also James v. San Jose Mercury News, Inc., 17 Cal. App. 4th 1, 12 (1993) (same). See also Daniel v. Wayans, 8 Cal. App. 5th 367, 397 (2017) (same). See also Issa v. Applegate, 31 Cal. App. 5th 689, 703 (2019) (same).

32.     All three of my claims of defamation that rely on lying by omission can just as easily pass as defamation by implication as they can defamation by omission. For Defamation #3, by claiming that xArtemisWolf's channel was terminated but not acknowledging that she created a new one, SidAlpha clearly *implied* that xArtemisWolf was, as of the time the video went live, without a YouTube channel. For Defamation #9, by calling me out for my allegedly unprofessional behavior without acknowledging that SkibbidyDibbity and InitiativeKookie went out of their way to push me over the edge, SidAlpha clearly *implied* that my response was entirely unprovoked. For Defamation #10, by reporting that I had been charged with a crime over a decade ago, but failing to mention that my charges were dropped, SidAlpha clearly *implied* that I was convicted of it. Even if that isn't a reasonable implication, by failing to mention the significant flaws in the prosecution's evidence that lead to the charges being dropped (as I explain in ¶¶ 116-119 of the Complaint), he still *implied* that I merely got off on a technicality rather than due to a genuine lack of evidence.

33.     When you juxtapose the precedent in Paterno - holding that defamation by omission is not actionable - with the numerous cases (including at least two that post-date Paterno) that hold that defamation by implication (which regularly comes as a result of omission of material facts) is indeed actionable, you realize that Paterno can only be understood to apply only to cases of heightened constitutional standards, like public figure plaintiffs. There's no other way to reconcile Paterno with this wealth of case law that otherwise contradicts it.

34.     When you look at it from this point of view, it does not appear as though I filed suit over something that is not illegal in California, but rather, simply called it by the wrong name. I simply called it "defamation by omission" because that's what I'm used to, when I should have called it "defamation by implication."

35.     It would be like if I filed a lawsuit in California over "tort of outrage." In my state (Arkansas), that's the official name of the tort[4]. In California, it is called "intentional infliction of emotional distress," but both torts still refer to the same underlying tortuous conduct. If I (a pro se litigant, who is entitled to have my pleadings construed liberally under Haines v. Kerner) were to file suit in this court over a tort of outrage, when I should have *called it* IIED, the Court would

---

4   See https://govt.westlaw.com/armji/Document/Ib7a8998a053f11db9346b0b8bf67faf0.

not have thrown out an otherwise sufficiently-plead claim just on that alone.

36. Therefore, it should not do so here, just because I called it "defamation by omission" when it's actually called "defamation by implication" in this state but is otherwise the same thing.

<u>The vast majority of defamations I am suing over in this case are not lies by omission/implication, but instead direct lies.</u>

37. But even if Paterno were applicable, that would only be grounds to dismiss 3 of the 10 counts of defamation, and as I explained above, *all ten counts* must be subject to dismissal under either § 1915 or FRCP 12(b) in order for the motion for subpoena to be denied.

38. That said, there are many slanders that were not based around lies by omission/implication. In fact, the majority of them were not. For example, Defamation #1 (¶¶ 9-49 of Complaint) claims defamation by directly lying, by insisting that I did not "consider fair use" when I absolutely did. That is not a lie by omission/implication, but just lying. Other examples where he did not lie by omission/implication, but instead simply lied, include Defamation #2[5], #4[6], #5[7], #6[8], #7[9], and #8[10]. That's seven counts of defamation – a majority of the counts of defamation I'm suing over – where I am not alleging defamation by omission/implication, but instead, I am alleging precisely the sort of "calculated falsehoods" that the Paterno court was referring to.

39. Even in the three counts of defamation where I allege lying by omission, statements in SidAlpha's smear video could still be interpreted by a reasonable trier of fact to constitute affirmative lies, rather than mere lies by omission. For example, in regards to Defamation #3, there are moments in the video that a reasonable person could interpret as him affirmatively

---

[5] Where he says I took down a co-author's upload of our collaborative stream, when the uploader was not a co-author.
[6] Where he accuses me of trying to "dox" IniativeKookie, when in reality, all I wanted to do was obtain the information needed to sue him to get him to leave me alone. It was no more "doxxing" than what I am trying to do to SidAlpha right now.
[7] Where he accuses me of trying to bully him when all I did was send him ONE EMAIL asking him to stop what he was doing, and I even said "please" in that email.
[8] Where he accuses me of being willing to sue literally anyone for literally any reason, when in fact, I only sue people when, as here, there is no other option to protect my rights.
[9] Where he claimed that I expect to be shown civility while reciprocating none of that civility.
[10] Where he claimed that I treat any disagreement, no matter how civil, as harassment. Not just a few disagreements where he believes I went over the line, but literally ANY disagreement.

declaring that xArtemisWolf did NOT create a new channel as of the time that video was published! One such example is at timestamp 7:23, when he insists that he wanted to show xArtemisWolf's channel, but literally couldn't because her channel was terminated. This statement is wholly irreconcilable with the omitted fact that xArtemisWolf did, in fact, have a channel that he could have shown to his audience. At this point, it's not even lying by omission, but instead just lying.

40. Think about it this way: Imagine if SidAlpha was instead making a smear video publicly accusing an employer of engaging in unlawful discrimination by firing an employee. In this hypothetical defamation case, SidAlpha subjectively knew that the employee managed to find another job less than 24 hours after getting fired that was nearly identical to his old job in all the ways that mattered, including pay, benefits, working conditions, schedule, and even distance from home he needed to commute each day. But in the smear video, not only does SidAlpha not disclose the fact that the employee managed to bounce back from the termination almost immediately, but actively states that the employee "is" financially destitute (present tense) because of this firing, and wonders out loud how the employee is supposed to put food on the table, knowing full well that the employee already had that part taken care of!

41. To be clear, in both of these cases, the defendant is absolutely entitled, under the First Amendment, to argue that the plaintiff still should never have done what he did in the first place, just as a matter of principle. But defamation law still requires that he make it clear that this is the position he is taking. He does not have the right, under the First Amendment, to knowingly misrepresent the facts in an attempt to get more people to take his side than if he had stated the facts clearly and accurately the first time, like he admitted over email to doing here.

42. A similar logic can be applied to Defamation #9. In that count of defamation, SidAlpha accused me of acting aggressively and unprofessionally against the likes of Skibbity Dibbity and InitiativeKookie while failing to disclose that my aggressive comments were reactive abuse. The implication is that my aggressiveness was entirely unprovoked. However, in Defamations #7 and #8, he also accused me of treating all disagreements, no matter how civil, as harassment while refusing to reciprocate the civility I supposedly demand from others. He is not "implying" that

my aggressive behavior is entirely unprovoked, but is affirmatively and positively stating such.

43. When these affirmative and unambiguous declarations are juxtaposed alongside the aggressive comments mentioned in Defamation #9, a reasonable person could very easily interpret those aggressive comments as being just as unprovoked as SidAlpha claims the rest of my behavior is.

44. So as you can see, even the times when I claim defamation by omission, it's not even really by omission. If he makes statements that are wholly inconsistent with the omitted facts, that's the same thing as lying directly.

45. As such, the odds that at least one count of defamation out of ten can survive a motion to dismiss is highly likely. Therefore, this third element of the Hard Drive Prods precedent has also been satisfied.

<u>Defamation #1 and #2, more than any other counts of defamation in this case, should be presumed false until the defendant proves them to be true.</u>

46. If it assists the Court in accepting that at least one count of defamation is likely to survive a motion to dismiss, consider this. For Defamation #1 (where he accuses me of issuing numerous DMCA Takedowns without considering fair use) and Defamation #2 (where he also accuses me of issuing a false DMCA Takedown, but this time, because I did not recognize the uploader as a co-author), he has made it clear in his smear video that his accusation against me is that I broke the law. He is not accusing me of doing an unethical thing, but an illegal thing. He could very easily have transparently disclosed to his audience that my actions were in fact legal if he wanted to. Plenty of other social media content creators do that all the time. Here are just a few examples:

(a) https://www.tiktok.com/@unbrokenfury/video/7195928415403527470 (timestamp 0:50 - 0:56) ("So enjoy doing this, simply because it's legal, but it doesn't make you any less of a scumbag").

(b) https://youtube.com/clip/Ugkxs8E9dq_aWDNtjF7Wui3FGQDAQaKD60u7, acknowledging that private corporations have the legal right to do what they're doing, before arguing that they *shouldn't*.

    (c)    https://youtube.com/clip/Ugkx6tiIfsTwqwP6UpVH4vXDpt7YOvyoj1Fr, where even I openly acknowledge the legality of someone's actions before giving the opinion on the morality thereof.

47. Sidalpha, in his smear video, could very easily have made a similar disclaimer, unambiguously clarifying that he accepts that I am acting squarely within my legal rights, but he, in his personal, non-binding opinion, believes I have a moral or ethical duty to do more than what the law strictly requires of me. Instead, he chose to clothe his smear video in language that made it absolutely clear that he was accusing me of **_breaking the law_**!

48. More than any other count of defamation, these two accusations should be presumed false until SidAlpha appears in this case and affirmatively proves them to be true. Once he appears in the case, he should hold the burden of proving that I, in fact, violated § 512(f), the same as if he were filing a counterclaim against me and suing for that directly.

49. Why? Because if you accuse someone of breaking the law, the burden of proof generally lies with the accuser. The one accused of breaking the law (me) is supposed to be clothed in the presumption of innocence. I am innocent until proven guilty. That's how it has worked for centuries. That's how it's *supposed* to work. It's a *good thing* that this is how it works. More importantly, if the accusations of § 512(f) misrepresentation were ever put before the Court in a standalone cause of action, that is precisely how it *would* work.

50. But if a defendant is permitted, under defamation law, to simply spread his accusations about me to the court of public opinion, and then put the onus on me to sue for slander, only to then force me to prove that the allegations are false, rather than him having to prove that the allegations are true, then he has essentially flipped the tables on me at no cost. At that point, I am effectively guilty until proven innocent of violating § 512(f), which is wholly contrary to public policy and express Congressional intent. "It is unlikely that Congress intended to allow the provisions of [the law] to be bypassed so easily." See MCI Telecommunications Corp. v. Exalon Indus., 138 F. 3d 426, 430 (1st Cir. 1998) (referencing a similar effort to "flip the tables" on the opposing party and force that party to proactively file suit and bear the burden of proof accordingly, when it should have been that party's constitutional right to merely react to a suit

being filed against them and enjoy the presumption of innocence accordingly).

51. Moreover, such a precedent would effectively deputize private citizens to engage in acts of vigilante justice against me. By spreading these accusations against me everywhere they possibly can *except in court*, they can use shame and public humiliation (not to mention the onslaught of harassment, cyberstalking, death threats, and other forms of stochastic terrorism that would inevitably result from the distribution of this slander) in order to extrajudicially punish me for this perceived wrongdoing, without ever having to *actually prove* one bit of it. That is just another form of taking the law into your own hands.

52. As I explained in the Complaint, the stress and anxiety I suffered as a result of the harassment caused me to become afflicted with an illness that *could have killed me*! I have suffered far, far more from their (SidAlpha and his allies) decision to be my judge, jury, and executioner than I would have suffered if they had done what they should have done all along and taken me to court for § 512(f) misrepresentation, proven their case in court, forced me to pay damages, and then left it at that.

53. At that point, why would anyone bother to take me to court and use the proper methods to resolve legal disputes? Shaming me in the court of public opinion is easier, cheaper, faster, doesn't require they provide even a scintilla of evidence, doesn't give me the chance to offer rebuttal evidence to refute their claims, doesn't matter if they get the law completely wrong, doesn't require that they give up the power to decide their case to an impartial tribunal, and imposes a much harsher punishment than what a court would impose. There is literally no benefit to doing it the legitimate way!

54. At that point, a smear video like the one in this case effectively becomes little more than a cyber perp walk: Showcasing the "perp" so he can be pilloried by the online community. Perp walks have long been declared unconstitutional, except to the extent they are absolutely necessary to perform a legitimate police function (such as transporting inmates to and from court), for this exact reason: In the absence of a legitimate law enforcement motive, perp walks effectively amount to little more than extrajudicial punishment. See Lauro v. Charles, 292 F.3d 202 (2nd Cir. 2000).

55.     See also https://www.nytimes.com/1994/10/30/magazine/the-big-city-walking-the-walk.html:

> "Is there any redeeming social value to the [cyber] perp walk?
>
> Well, it does perform some social functions. A community shaken by an act of deviancy wants reassurance that moral order has been restored, and a perp walk accomplishes this much more quickly than the courts can. But, then, so does a lynching.
>
> The [cyber] walk can also serve to provoke an emotion that is otherwise alien to [the Internet]: shame. For one brief moment, the perp loses the [Internet]'s protective anonymity and feels, like Hester Prynne, the moral claustrophobia of a righteous community. Puritans can argue that this is good for the perp's soul, but let's not pretend we're doing it for his benefit. The perp walk is for everyone else. It honors the police, sells papers, boosts television ratings and entertains the public -- all at the expense of a person who is supposed to have the presumption of innocence."

56.     Of course, unlike with perp walks, smear videos made by private citizens still enjoy First Amendment protection, so we cannot simply outlaw smear videos entirely, and it is long established, black letter law that truth is an absolute defense to defamation. So... what to do?

57.     The quickest and easiest way to safeguard against this type of vigilantism, while still protecting the Defendant's First Amendment right to report the truth, is to require a defamation defendant who accuses his plaintiff of breaking the law (rather than simply doing an unethical thing) to prove his allegations were true, not just as a matter of fact, but also as a matter of law. Proving that the law is what he says it is would have to be just as important as proving the facts to be as he described them, as that is precisely what he would have to prove if he went through the Courts like he should have, and as I explained above, that is not something he should be allowed to simply pass onto me through the simple expedient of making the accusations against me publicly outside of a courtroom without due process of law.

58.     So unless SidAlpha can prove that I *subjectively knew* that all of my DMCA Takedowns were false (not just that he believes that the videos I had taken down were, in fact, fair use), or at the very least prove that § 512(f) does in fact call for a standard of objective reasonableness rather than subjective good faith, then I am almost certain to prevail on the merits of the first two

counts of defamation, let alone survive a motion to dismiss.

59. So that begs the question: Will SidAlpha be able to prove that I violated § 512(f)? The answer is, almost certainly, no. As I alleged in ¶ 12, SidAlpha has openly admitted in publicly visible tweets that I subjectively believe that I was legally in the right. I have screenshots of these tweets, and the links are (at least as of the time of this writing) still publicly visible, as you can see here:

（a） https://twitter.com/acerthorn/status/1485464622786359301
（b） https://twitter.com/SidAlpha/status/1485465489442705409
（c） https://twitter.com/acerthorn/status/1485467034439856132
（d） https://twitter.com/SidAlpha/status/1485468224502132736

60. In case SidAlpha shamelessly tries to delete these tweets to cover his tracks before the Court has a chance to review them, screenshots thereof are being attached as **Exhibit B**.

61. As you can see, there is a 100% chance I will prevail on the first count of defamation, because he has already publicly admitted to facts that necessarily mean that I did not violate 17 USC § 512(f), and since he was clearly accusing me of breaking the law, he cannot pass this off merely as his personal opinion.

<u>New factual developments have occurred that make my likelihood of success on Defamation #1 even more likely than it already was.</u>

62. In addition to all of that, it is also worth noting that new information has surfaced since the filing of this lawsuit, information which I could not have included in the original complaint, but which nonetheless increases the likelihood of me prevailing on the merits regarding Defamation #1, let alone surviving a motion to dismiss.

63. On July 4, 2023, SidAlpha posted a video to his channel. It can be found at the following url: https://youtu.be/ahcUGh7wPwQ?t=687. At timestamp 11:27 – 17:47 of that video, SidAlpha acknowledges how prevalent these low-effort reaction videos are on YouTube, despite opining that they are extremely poor cases for fair use, even at one point calling them a "blight on the industry." He then goes on to admonish Reforge (the YouTuber he was criticizing in that video) for copying 100% of the articles he was reacting to (thereby causing the third and fourth factors

to weigh against Reforge right out of the gate) while providing only the bare minimum amount of criticism and commentary (basically just agreeing or disagreeing with the opinions of the article and leaving it at that). He acknowledges that this format for reaction videos create extremely poor cases for fair use as a matter of law, despite being exceedingly common on YouTube, "and his chances of coming out on top [in court] definitely would not look good" (timestamp 17:43).

64. His posting of this video prompted me to make my own response video the next day. You can see that video at the URL of https://youtu.be/cfKMURMBGK0. In my original complaint, I argued that the basis for my claim of Defamation #1 was that SidAlpha had egregiously over-stated my legal duty under Lenz v. Universal in order to support his accusation against me that I not only did something he personally considered to be morally abhorrent, but also downright illegal. But now, as of this new development, he was also lying about the facts as well as the law.

65. In my response video, I explain that at least a half a dozen other DMCA Takedowns which I have issued also follow the very format that he (SidAlpha) criticizes Reforge for using, and yet, SidAlpha, in his smear video about me, insisted that all of my DMCA Takedowns, except for one of them[11], were clear-cut cases for fair use. Now, due to his July 4 video, we now know that he does not even believe that himself. As I explain near the end of my response video, "By his own admission now, he isn't mistaken about the law; he's lying! Capital 'L' lying!" (Timestamp 15:08).

66. This means that, even discounting my potentially novel theory for defamation liability (that you still defame a person if you get the facts right but get the law wrong, as long as you're specifically accusing the plaintiff of breaking the law and not simply doing something scummy), I still would prevail on the merits on Defamation #1, because now, by his own admission, he also lied about the facts themselves in his smear video about me.

67. Put simply, at least one of my counts of defamation has a near 100% chance of surviving a motion to dismiss.

## Conclusion

68. In conclusion, SidAlpha is a real person; I have taken reasonable attempts to locate the

---

[11] one of the three I issued against xArtemisWolf, who is the subject of Defamation #3

defendant on my own to no avail; At least one out of ten counts of defamation is almost guaranteed to survive a motion to dismiss; this subpoena is nearly certain to reveal the defendant's legal name and current address with a high degree of accuracy.

69.     Wherefore, premises considered, I respectfully pray that the Subpoena be issued forthwith.

    So requested on this, the 27th day of September 2023.

*/s/ David Stebbins*
David Stebbins (pro se)
