David Stebbins (pro se Plaintiff)     123 W. Ridge Ave., APT D          Harrison, AR 72601
(870) 212-4947                        acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                    PLAINTIFF

VS.                            Case 4:23-cv-00321-DMR

JOHN DOE, d.b.a. SIDALPHA                                          DEFENDANTS

### THIRD MOTION FOR ISSUANCE OF SUPBOENA DUCES TECUM

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Third Motion for Issuance of Subpoena Duces Tecum in the above-styled action.

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| I.  TABLE OF CONTENTS | i |
| II.  TABLE OF AUTHORITIES | ii |
| III. ARGUMENT | 1 |
| 1.  Motion to Recuse Pending | 1 |
| 2.  Incorporation of Previous Motions | 1 |
| 3.  Court ignoring arguments | 1 |
| 4.  Affidavit and Declaration | 5 |
| 5.  Court's preferred case law is superseded by binding precedent. | 6 |
| 6.  The Court contradicts itself | 7 |
| 7.  Long-Arm Jurisdiction of Passive Websites | 9 |
| 8.  SidAlpha routinel targets Californian victims | 13 |
| 9.  SidAlpha is a gaming channel | 15 |
| 10. Geolocation technology | 16 |
| 11. Failure to prosecute | 17 |
| 12. Undue Prejudice | 18 |
| 13. Recusal | 19 |

14. Relief Requested         20

IV. CONCLUSION         21

**TABLE OF AUTORITIES**

| **Case Law** | **Page(s)** |
| --- | --- |
| • Dakota v. Wayfair, Inc., 138 S. Ct. 2080 (2018) | 9,10 |
| • Gertz v. Robert Welch, Inc., 418 US 323 (1974) | 12 |
| • Good Job Games v. Say Games, 458 F. Supp. 3d 1202 (N.D. Cal. 2020) | passim |
| • Good Job Games v. Say Games, No. 20-16123, 2021 WL 5861279 (9th Cir. Dec. 10, 2021) | 3 |
| • Keeton v. Hustler Magazine, Inc., 465 US 770 (1984) | 3,8 |
| • Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218 (9th Cir. 2011) | passim |
| • PA Newspapers v. Hepps, 475 US 767 (1986) | 12 |

## ARGUMENT

### Motion to Recuse pending

1.      I am filing a Motion to Recuse alongside this motion, since Judge Ryu has made it clear that she has already prejudged this case and is determined to throw the case out by any means necessary. That motion should be ruled on before this motion is, because otherwise, I risk having a disqualified judge issue a ruling on this motion, which would be an axiomatic violation of my due process rights.

### Incorporation of Previous Motions

2.      To avoid me having to repeat long and redundant arguments that I have already put before the Court, I hereby incorporate by reference the following filings, and the arguments and legal citations contained therein:

    (a)      Complaint (Dkt. 1)

    (b)      First Motion for Issuance of Subpoena Duces Tecum (Dkt. 6)

    (c)      Response to Show Cause Order pertaining to Personal Jurisdiction (Dkt. 13)

    (d)      Second Motion for Issuance of Subpoena Duces Tecum (Dkt. 19)

    (e)      Motion for Leave to File Motion for Reconsideration (Dkt. 23)

3.      Instead, the majority of the content of this motion will be dedicated to arguing the thing that Judge Ryu seems most skeptical about: Personal jurisdiction.

### This Court's blatant ignoring of the facts is an abuse of discretion.

4.      As I pointed out in the Motion for Leave to File Motion for Reconsideration, I gave numerous alternative theories for personal jurisdiction beyond merely the fact that he posted the smear video on YouTube, a California-based website. Even after denying the motion for reconsideration, many of these arguments remain unaddressed, including, but not limited to, the following:

    (a)      The Defendant conducts substantial business in California. See Dkt. 13[1], ¶¶ 11-19.

    (b)      My reputational injury was felt primarily in California. See Dkt. 13, ¶¶ 20-33.

    (c)      Barring all of that, the Court should still authorize jurisdictional discovery. See Dkt.

---

[1]   In my Motion for Leave to File Motion for Reconsideration, I inadvertently and erroneously listed Dkt. 17 instead of Dkt. 13. That was my mistake.

13, ¶¶ 65-69.

5.      The Court utterly ignored all of these arguments. Some of these arguments were partially addressed when denying the motion for leave to file motion or reconsideration (Dkt. 26), but even then, many of them were left unaddressed.

6.      The Court's failure to consider the half a dozen arguments which I put before it is especially problematic in this case, because the Court cites ostensibly-controlling precedent (namely, the case of Good Job Games v. Say Games, 458 F. Supp. 3d 1202 (N.D. Cal. 2020)) which directly references many of the arguments I put before the Court. For example, on multiple occasions, the GJG court referenced the 9th Circuit case of Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218 (9th Cir. 2011) as controlling. I also referenced Mavrix as controlling precedent in my own brief to show personal jurisdiction. See Dkt. 13, ¶¶ 11-19. Mavrix has held that, while posting on a passive website **_alone_** isn't enough to establish personal jurisdiction in any state where that webpage can be viewed, that, along with "something more," is still good enough. See id at 1229. In my response brief, I offered nearly half a dozen "something mores," each of which could singlehandedly be a sufficient "something more" to establish "Mavrix jurisdiction[2]," except that the Court ignored those arguments entirely.

7.      One of the things which Mavrix listed as a potential "something more" was "the geographic scope of the defendant's commercial ambitions." As I pointed out in Dkt. 13, ¶¶ 43-48, SidAlpha's ambitions with spreading that smear video was global. In doing so, he almost certainly "targeted California," as well as every other potential jurisdiction on every continent, just like how Hustler Magazine "targeted" New Hampshire as well as every other state in the country and every first-world country on earth where pornography was legally allowed.

8.      As for _commercial_ ambitions, I also addressed that in Dkt. 13, ¶¶ 14-19. SidAlpha did not simply post his video on YouTube; he actively receives revenue from YouTube, as well as at least two other crowdfunding sources (Patreon and GoFundMe) which are also located in California. Mavrix v. Brand has explicitly held that this level of commercial activity is a sufficient "something more" to establish California jurisdiction, for reasons I already explained in the

---

2   For lack of a better term; referring to long-arm jurisdiction of a website by conducting "something more" than simply operating a passive website in order to specifically target a given forum.

sections of Dkt. 13 that the Court entirely ignored for no reason.

9.      In fact, this Court practically calls attention to how much its own logic is superseded by the Court of Appeals and the arguments I have already put before it. When citing the case of Good Job Games v. Say Games, the Court acknowledges that the case was "reversed and remanded on other grounds," but, rather tellingly, it does not state exactly what those "other grounds" were. That is a damning omission, because if the Court had not omitted that, it would have been forced to acknowledge that the Court of Appeals ordered the District Court to

# ***PERMIT JURISDICTIONAL DISCOVERY!***

See https://law.justia.com/cases/federal/appellate-courts/ca9/20-16123/20-16123-2021-12-10.html

> "Because the district court dismissed on jurisdictional grounds, it did not substantively consider the issue of discovery.
> Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.
> ...
> Because the record is insufficiently developed to resolve personal jurisdiction, and because further discovery might well demonstrate facts sufficient to constitute a basis for jurisdiction, we reverse and remand for jurisdictional discovery."
> (citations and quotations omitted).

10.     In other words, the Court of Appeals held the complete opposite of what this Court is currently holding. Whereas this Court has held that I "bear[] the burden of establishing that Defendant purposefully directed its conduct at California," and that I must do so without jurisdictional discovery (which puts many plaintiffs, not just me, in a Catch-22), the Ninth Circuit Court of Appeals has held that, in order to dismiss at the pleading stage for lack of jurisdiction, the Court must positively find a lack of jurisdiction. But if the Court even arguably has jurisdiction, it must conduct jurisdictional discovery until that question becomes definitively resolved.

11.     This is precisely what I proposed in Dkt. 13, ¶¶ 65-69, another portion of the brief which the Court entirely ignored, even after reconsideration.

12.     Of course, Judge Edward Chen (the district court judge in the Good Job Games case) still

gave infinitely more consideration to the prospect of jurisdictional discovery than *this* Court did. Specifically, he made a summary decision that jurisdictional discovery would be futile. See GJG v. SA at 1214 ("GJG has not met its burden in demonstrating how or why more information from these topics would alter the outcome of the jurisdictional analysis. It has failed to make even a *prima facie* showing justifying discovery," but never explained exactly why it was so futile). But the fact that he considered jurisdictional discovery at all constitutes infinitely more consideration than what this court gave, and even then, the Court of Appeals *still* found his consideration to be inadequate! So just imagine what would happen on appeal in this case, where this court failed to consider jurisdictional discovery at all.

13.     Meanwhile, Judge Chen found unpersuasive the allegation that the defendant made sales in California. See id at 1210. However, that logic goes against the express findings of the Supreme Court in the case of Keeton v. Hustler Magazine, Inc., 465 US 770 (1984), which found personal jurisdiction in the State of New Hampshire solely on the fact that the Defendant had made a sizeable amount of sales in that state! I explained as much in Dkt. 13, ¶ 37, but again, the Court completely ignored that for no reason, even after reconsideration.

14.     Even the 9th Circuit – in the unpublished case which this Court referenced but did not elaborate on – acknowledged that one of the things which had the potential to create long-arm jurisdiction in California was the Defendant's "revenue derived from ... distribution agreements regarding ... [and] efforts to ... commercialize, or profit from" the underlying work in the underlying forum. That was the decision of the Court of Appeals in the case that *this very court* referenced!

15.     In other words, because SidAlpha clearly entered into a distribution agreement with YouTube[3], because he derived revenue from YouTube by reason of him being a member of the YouTube Partner Program, and because he very clearly attempted to commercialize and profit off of the smear video (not just to spread it, but to *commercialize* it using Californian monetization

---

3   See https://www.youtube.com/t/terms#27dc3bf5d9 ("By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service").

outlets), he has engaged in the necessary "something more" in order to establish long-arm jurisdiction in California. Period.

16.     There is no way around this. The Supreme Court unequivocally held that minimum contacts does not require an online entity to conduct the majority of its business in a given state, or even the plurality of its business. As long as it makes a greater than nominal amount of sales (or, in this case, views) in one state, that state has personal jurisdiction and that's simply all there is to it. Both this Court and Judge Chen want there to be something special about California in particular? Well, the Supreme Court expressly held that *that isn't necessary* for minimum contacts! Only by wholesale ignoring (even after reconsideration) the arguments I already put before the Court can the Court make even a colorable case for it lacking jurisdiction.

17.     After the case of GJG v. SG was remanded on appeal, and after the parties conducted jurisdictional discovery, Judge Chen ultimately concluded that he did in fact have jurisdiction over the case, and that he was in the wrong in his initial order published in the Federal Supplement, and even after previously refusing to allow jurisdictional discovery since the Plaintiff had not shown even so much as a colorable case for personal jurisdiction. See Case 3:19-cv-07916-EMC, Dkt. 118, p.5, lines 11-12 ("For the reasons stated herein, the Court concludes it has personal jurisdiction over SG under Rule 4(k)(2)"). See also id at p.12, line 14 ("Thus, this Court denies the motion to dismiss for lack of personal jurisdiction"). So clearly, this Court should likewise follow in its comrade's footsteps and acknowledge that it has jurisdiction.

**Affidavit and Declaration regarding SidAlpha's videos' views**

18.     This Court refused to consider my arguments that the Defendant's smear video was almost certainly distributed in California, because the factual allegations were not included in an affidavit. To remedy this, I am hereby attaching **Exhibit A**. I also hereby incorporate all of the previous arguments that the Court previously refused to consider.

19.     In addition, the Court said that "Plaintiff – not Defendant – bears the burden of establishing that Defendant purposefully directed its conduct at California." Ok, fine. I'd be happy to do that. But in order to do that, I need jurisdictional discovery (something this Court seems determined me at all costs), otherwise that puts me in a Catch-22, as I mentioned earlier.

**The Court's reliance on Good Job Games v. Say Games and DFSB Kollective v. Bourne are superseded by binding precedent.**

20.     When I argued that SidAlpha conducts substantial business in California by dint of him being a member of the YouTube Partner Program and having a Patreon and GoFundMe accounts, I cited the binding precedent of Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F. 3d 1218 (9th Cir. 2011), which states in pertinent part ...

> "Like any large media entity, celebrity-gossip.net courts a national audience, not restricted to California. However, the website has some specific ties to California. Brand makes money from third-party advertisements for jobs, hotels, and vacations in California... Brand has agreements with several California businesses. A California Internet advertising agency solicits buyers and places advertisements on celebrity-gossip.net... A California firm designed the website and performs site maintenance. Finally, Brand has entered a 'link-sharing' agreement with a California-based national news site, according to which each site agrees to promote the other's top stories." See id at 1222.

> Also ...

> "As did Hustler in distributing its magazine in New Hampshire, Brand "continuously and deliberately exploited" the California market for its website. Brand makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to Brand. A substantial number of hits to Brand's website came from California residents... In this context, it is immaterial whether the third-party advertisers or Brand targeted California residents. The fact that the advertisements targeted California residents indicates that Brand knows — either actually or constructively — about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.
> ...
> Based on ... the size and commercial value of the California market, we conclude that Brand anticipated, desired, and achieved a substantial California viewer base. This audience is an integral component of Brand's business model and its profitability." See id at 1230 (citations and quotations omitted).

21.     This Court says that I "cannot rely on a defendant's relationships with third parties headquartered in California to establish that the defendant directed its intentional acts towards

the forum state?" Well, unambiguous binding precedent from the 9th Circuit Court of Appeals says ... oh yes I can!

22.    And please, don't gaslight me by saying that Mavrix is distinguishable/inapposite because of this reason or that. Bear in mind that even Good Job Games v. Say Games – which this Court cites as controlling precedent despite it not being binding precedent – itself cited Mavrix as controlling precedent. See id at 1208 ("The decisions in Mavrix Photo, Inc. v. Brand Techs., Inc., and DFSB Kollective Co. v. Bourne are instructive") (citations and quotations omitted). For this Court to cite to one case law (that isn't even binding precedent to begin with) as controlling while blatantly ignoring the very precedent that same case cited as controlling is, in a word, baffling. It makes sense if we accept that this Court is determined to, and actively searching for a means to, throw this case out by any means necessary, merits be damned, simply because the Court has prejudged the case, but that is the *only* way the Court's logic makes sense.

23.    Indeed, even GJG v. SG contains language which clearly indicates the Defendant's connections with California corporations is sufficient to establish minimum contacts in California. When listing the first prong of the three-prong Calder test, the GJG Court held ...

> "The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum ***or resident thereof***; or perform
> some act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;"
> See id at 1206 (emphasis added).

24.    In other words, by even the GJG Court's own admission, consummating some transaction with ***a resident of*** California is just the same as directing its activities towards California itself. Even the case law that this very Court relies on admits to that much.

25.    So I humbly and respectfully ask that the Court stop actively searching for whatever excuse it can find to find a lack of jurisdiction, and finally issue the subpoena.

**The Court contradicts *itself* by finding *its own* controlling precedent to be inapposite**

26.    Further compounding the evidence that this Court is determined to simply throw this case out by any means necessary is the fact that it finds the very case law which it previously found to be controlling to suddenly be inapposite. It's one thing to find Mavrix inapposite despite being

cited as controlling precedent by the very precedent that this Court cites as controlling. It's another thing entirely for this Court to cite a particular case law as controlling, and then turn around and find *that very same case law* to be inapposite.

27.     All throughout this case, the Court has cited Calder v. Jones, 465 US 783 (1984) as the controlling case law on whether or not this Court has jurisdiction. See Dkt. 12, p. 4, line 10. When I use that case as a guide, and point out that the smear video concerned, at least in part, several of my "California activities" (namely, the lawsuits I had filed), this Court suddenly turned face and found Calder to be inapposite! See Dkt. 26, p. 4, line 4.

28.     Those two things cannot both be true at the same time. Precedent being "controlling" and precedent being "inapposite" are literally complete opposites of one another. It honestly feels like this Court is only considering precedent to be inapposite when it benefits me and controlling when it doesn't benefit me ... because the Court is determined to find any excuse it can to throw the case out by any means necessary.

29.     The only way the Court's logic makes any sense without the Court having prejudged the case is if we accept that the forum residency requirement (where the plaintiff resides in the state where he seeks to bring the case) is absolutely indispensable to establishing jurisdiction in the forum. No forum residency, no jurisdiction, no matter how many other of the Calder factors are present.[4] Of course, even then, it would still be inappropriate to say that Calder is "inapposite," only that I had failed to meet the criteria, since "inapposite" means it isn't relevant to the instant case in any way, shape, or form. But at least it would make the Court's logic make sense without it being yet another clue that the Court has prejudged the case.

30.     But even barring that, that interpretation of the case law doesn't make any sense. Nothing in the Calder opinion states, or even implies, that the plaintiff being a resident of California was essential to them reaching the decision they did. Rather, an objective and impartial reading of Calder (one not tainted by having prejudged the instant case and a desire to throw it out by any

---

4   For the record, forum residency is literally the *only* factor cited by Calder that isn't present in this case. My membership in the YouTube Partner and Twitch Affiliate programs mean I have "career connections" in CA; the slander concerned California activities, and the "brunt of the harm" (Calder, supra at 789) was felt in California, for reasons I already explained in Dkt. 13, ¶¶ 20-33. So, quite literally, forum residency is the one Calder factor not present here.

means necessary) clearly indicates the complete opposite: That the defendant was subject to Californian jurisdiction because he had "specifically targeted" California; the Court then went on to list the various ways[5] in which the had specifically targeted that state, ***any one of which*** would have been singlehandedly sufficient to establish long-arm jurisdiction in that state! There was nothing special about the Plaintiff's residency status in that regard.

31.     Credence is lent to this interpretation (assuming it wasn't obvious to begin with) when we look at its sister case of Keeton v. Hustler Magazine, Inc., 465 US 770 (1984), which was orally argued on the same date, and published on the same date, as Calder, so clearly the Supreme Court was considering the same standards in both cases. In Keeton, the Supreme Court found jurisdiction, despite a lack of forum residency, simply because the defendant had done something ... anything ... to specifically target NH. Specifically, they found that the Defendant had contracts with NH retailers to sell its magazine. That was it. That's all they found. But even then, they still found that one element to be singlehandedly sufficient for jurisdiction.

32.     Clearly, Keeton (and, by proxy, Calder) does NOT require forum residency, which means the Court's order violates black-letter law. All that is required is SOME kind of action specif-ically targeting the forum, and since I have shown that SidAlpha's slander included some acts of "california-based activities," that means I have met this lenient standard. It's just that this Court – which is determined to find a lack of jurisdiction by any means necessary – refuses to accept it.

**Passive websites are clearly subject to the laws of nonresident states in most other cases.**

33.     There is indeed plenty of precedent for finding minimum contacts in nonresident states. For example, if I (a resident of Arkansas) attempt to access the website of www.youporn.com without a VPN, this is the page I get:

> "Dear user,
> As you may know, your elected officials in Arkansas are requiring us to verify your age before allowing you access to our website. While safety and compliance are at the forefront of our mission, giving your ID card every time you want to visit an adult platform is not the most effective solution for protecting our users, and in fact, will put children and your privacy at risk.
> In addition, mandating age verification without proper enforcement gives platforms the opportunity to choose whether or not to comply. As we've seen in

---

5   "Ways" with an S... as in plural.

other states, this just drives traffic to sites with far fewer safety measures in place.
Very few sites are able to compare to the robust Trust and Safety measures we
currently have in place. To protect children and user privacy, any legislation must
be enforced against all platforms offering adult content.
The safety of our users is one of our biggest concerns. We believe that the best
and most effective solution for protecting children and adults alike is to identify
users by their device and allow access to age-restricted materials and websites
based on that identification. Until a real solution is offered, we have made the
difficult decision to completely disable access to our website in Arkansas.
Please contact your representatives before it is too late and demand device-based
verification solutions that make the internet safer while also respecting your
privacy.
Youporn is rated with RTA label. Parents, you can easily block access to this site.
Please read this page for more information."

34.     See **Exhibit A, ¶¶ 13-15,** as well as **Sub-Exhibit 1**, since this Court says it will not
accept these factual allegations without an affidavit.

35.     So clearly, the business which owns and operates youporn.com acknowledges that they
are subject to the jurisdiction of the State of Arkansas whenever a resident of that state attempts
to access its site. YouPorn is jut as much of a "passive website" as YouTube is. You can upload
videos and post comments on other people's videos, but you can do that on YouTube too![6] And
yet, the State of Arkansas clearly has jurisdiction to the extent Arkansans are visiting the site!

36.     See also South Dakota v. Wayfair, Inc., 138 S. Ct. 2080 (2018) as an example of a passive
website being subject to the jurisdiction of a foreign state simply because it has customers in that
state.

37.     Another example is the website of www.simonandschuster.com, the official website of
Simon & Schuster, LLC, headquartered in New York[7] and one of the largest publishers of books
in the English-speaking world, and is considered one of the "Big Five" book publishers.[8] That
said, its website appears to be even more passive than YouTube is. It has listings for each of its
books currently in circulation but there is no option to purchase those books directly; instead,
they merely provide links to online storefronts like amazon.com or booksamillion.com. In fact, I

---

6   Even the site's name clearly attempts to convey to its audience that this website is "like YouTube, but for porn."
7   See https://about.simonandschuster.biz/locations/
8   See https://aspiringauthor.com/publishers/publishing-houses-in-new-york/

was unable to even find any place on that website where aspiring authors can even submit their unpublished books for consideration! So this site is even more of a "passive website" than YouTube is. Despite this, their website has a disclaimer stating that they comply with various states' laws regarding the privacy and data collection of its users, while also making clear that they only engage in this compliance for users in states where that is legally required. See www.simonandschuster.com/p/privacy-policy#additional-information-us-states:

> "If you are a California, Connecticut, Colorado, Utah, or Virginia resident, you may have certain rights ... Not all the rights will be available to you and we may not have to comply with your request depending on where you live."

38.     Although Simon & Shuster are in the business of publishing books – a brick & mortar industry which would undoubtedly establish minimum contacts in every state in the brick & mortar world – that would not trigger California's laws regarding the collection of users' data on their website. The operation of the website – and *only* the operation of the website – is subject to that regulation. But since this website is even more of a "passive website" than YouTube is, that must mean that they still establish sufficient minimum contacts in California in order to be subject to its jurisdiction, just like YouPorn does when Arkansas residents visit that otherwise "passive website."

39.     Also, complying with these privacy laws most likely is very expensive. It seems unlikely that a corporation – which is exclusively concerned with its bottom line – would be willing to comply with these laws "just in case," unless it felt there was a reasonable chance it would be subject to the jurisdiction of these nonresident states. In all likelihood, a site against whom these expensive demands are placed on it by a nonresident state would likely fight jurisdiction, just like Wayfair did against South Dakota as mentioned earlier. So the fact that Simon & Shuster *isn't* attempting to litigate the jurisdiction, but is instead merely complying with the laws of the states their website does not "individually target," shows that they feel they are still subject to these states' jurisdictions.

40.     So at this point, when the Court cites Good Job Games v. Say Games as controlling precedent, the only way that logic makes any sense is if the Court treats personal jurisdiction in cyberspace cases in a vastly different way it treats a defendant's actions in nearly any other

aspect of law. Namely, it isn't the defendants' targeting actions which trigger minimum contacts, but the size and resources at the defendant's disposal, so that a defendant has minimum contacts in a nonresident state if it has the resources and willingness to individually target that forum even without the Internet making such targeting so effortless. For example, simonandshuster.com has minimum contacts in California, not because it is publicly visible in California, but because its owner – Simon & Shuster LLC – is one of the "Big Five" book publishers, meaning it absolutely has the capital and other resources at its disposal to enter the California market even if the Internet didn't make such distribution so effortless. By contrast, Say Games LLC may distribute in California, but that's only because the power of the Internet enables them to do so. Say Games is an independent game studio, and were it not for the convenience, omnipotence, and omnipresence of Internet, they would never be able to have any sort of market outside of its home country of Belarus and maybe those countries that share a border with it. By contrast, video game publishers such as Activision or Electronic Arts would indeed make minimum contacts in every state in America – even for games that are only available for digital download and not at any brick & mortar retailers – because, like Simon & Shuster, they have the vast resources, capital, and corporate connections to easily make those minimum contacts even without the Internet.

41.     But if that's what the Court is doing, then that doesn't make any sense. After all, no other aspect of the law employs that logic. Independent creators online are held to essentially the same standards, when it comes to the likes of copyright law, defamation, etc., as the largest and most well-funded of corporations. For example, in the area of copyright law, random people who publish reviews of movies or video games on YouTube are held to the same standards of fair use as professional review sites. See https://youtu.be/1Jwo5qc78QU?t=560 (timestamp 9:20 – 9:54) ("[T]he law holds kids on YouTube messing around to more or less the same legal standard as Hollywood studios"). Meanwhile, when it comes to cyber defamation, random users on any social media site are held to the same substantive law regarding due diligence, fact-checking, and actual malice as the nation's largest news outlets. In the instant case, once personal jurisdiction is finally established, SidAlpha will be held to the same substantive defamation law standards that

CNN or the New York Times would be held to when publishing an otherwise identical smear article about me.[9] It makes absolutely no sense that minimum contacts, and *only minimum contacts*, would somehow be subject to different treatment when it comes to cyber commerce. After all, it may only be due to the "Power of the Internet" that SidAlpha and Say Games are able to circulate their content across the entire globe, but by that same token, it is likewise only due to the "Power of the Internet" that the *harm these cyber actions inflict* on their respective victims is able to be felt on such a massive scale to the point where it is worth suing over. Were it not for his slander being circulated over the Internet, I almost certainly would not have suffered widespread harassment and death threats to the point where I became afflicted with life-threatening pnuemonia.

42.     Therefore, the doctrine of "reductio ad absurdum" states that the Court should treat personal jurisdiction in cyber tort cases the same way it would treat any other aspect of the case, and accept that it has jurisdiction accordingly.

**If one act of minimum contacts creates general minimum contacts for all of the defendant's concurrent activities, then SidAlpha has met that standard too.**

43.     At this point, I am admittedly throwing ideas against the wall. The Court has not made it clear exactly what it considers to be "specifically targeting," so I am having to guess as to the Court's intentions and cover all my bases. But for the sake of argument, let's assume that the reason the website of simonandshuster.com creates minimum contacts in California while Say Games does not isn't because Simon & Shuster are big enough to do that without the Internet, but because they sell plenty of their books in brick and mortar retailers in every state, including California. Because they create miminum contacts for that reason, everything that company does necessarily is also subject to jurisdiction in California, even if those same actions would not create minimum contacts by themselves (like operating a passive website). Likewise, Say Games only had one product (Cannon Shot) on the market at the time it was sued, but if it had sold even one other product at a San Francisco brick and mortar retailer, then all of its commercial activity

---

9   In fact, those defendants would even have a de jure advantage over the likes of SidAlpha, since they would obviously qualify as "media defendants" for purposes of invoking the privileges of *Gertz v. Robert Welch, Inc.*, 418 US 323 (1974) and *PA Newspapers v. Hepps*, 475 US 767 (1986), whereas SidAlpha cannot claim those same protections, specifically because he isn't big enough to be considered a "media defendant."

– including Cannon Shot – are likewise subject to the jurisdiction of the Northern District of California, even if the two commercial activities have nothing to do with each other beyond being made and sold by the same company.

44.    If that is the Court's reasoning (which is already a stretch, even then), then that means that I can establish personal jurisdiction in this case simply by showing that SidAlpha has "individually targeted" California-residents for *some* of his smear videos. By this logic, if I can prove that even one resident of California was smeared on SidAlpha's channel, then he has created minimum contacts in California for his *entire channel*, up to and including the smear video about me.

45.    Well, SidAlpha has done that, too! Specifically, on March 1, 2022 – only 17 days after publishing his smear video about me[10] – SidAlpha published a smear video about a company called Artesian Builds, or AB for short. See https://youtu.be/OYI7mZwI4B8. In making this video, SidAlpha clearly "individually targeted" AB, which means that he creates minimum contacts, under the Calder test, in whatever district AB is located in. See Calder at 788 ("story concerned the California activities of a California resident... an [entity] whose... career was centered in California").

46.    At the time of the video's publication, AB was located and conducted business primarily in the Northern District of California. This is evidenced by the fact that, on April, 22, 2022, AB filed for Chapter 11 Bankruptcy, and did so in the United States Bankruptcy Court for the Northern District of California. See Case 4:22-bk-40396 of that Court. In Dkt. 1, Page 1 of that case, the debtor attests, under penalty of perjury, that their principal place of business was at the address of 399 Grand Ave., Oakland, CA 94610, which puts it squarely in the borders of the Northern District of California.

47.    Therefore, according to the aforementioned logic, SidAlpha's entire channel is now subject to the jurisdiction of the Northern District of California, as well as every other district where one of his targets was located. Since I am one of his targets, that means that this case may properly be heard in the Northern District of California.

48.    If that isn't enough, consider this: SidAlpha also made a smear video about Hidden

10  Thereby qualifying it as a "concurrent" act to his smear video about me, to the extent that matters.

Variable Games. See https://youtu.be/v1gmo_btZgU. That company is also located in California. See www.hiddenvariable.com/about/ ("Hidden Variable is based in sunny Los Angeles, California"). He also made a video smearing the individual named Demetrious Polychron over his allegedly vexatious litigation. See https://youtu.be/mjuV8yD4QFg. Mr. Polychron also has his primary place of business in California. See www.linkedin.com/in/demetriouspolychron.

49.     But even barring all of that, there is still ample evidence that SidAlpha has a rather particular focus on California-based entities to the same extent that Brand Technologies had a focus on California-based celebrities, because...

**SidAlpha is, first and foremost, a "gaming" channel, meaning his focus is on discussing video game companies, and most of the largest companies are in California.**

50.     In addition to covering these one-off instances of California-based entities, we must also remember that SidAlpha is a gaming channel. This means that he "expressly targets" the video game industry for his coverage, in much the same way that Brand Technologies targeted celebrities (and especially actors) for their coverage. See Mavrix, supra at 1230 ("[I]t is clear from the record that Brand operated a very popular website with a specific focus on the California-centered ... industries").

51.     Well, along that same vein, video game publishers are not *entirely* located in California, but they disproportionately are located in Silicon Valley (which is in California), which means that SidAlpha necessarily disproportionately targets Silicon Valley (and therefore California) simply by dint of "expressly targeting" video games for his channel's focus.

52.     For example, Electronic Arts is headquartered in California (see craft.co/electronic-arts), and SidAlpha regularly documents the activities of that company. See https://www.youtube.com/playlist?list=PLpL3n7W6QqgBQ_g-HIE10X_Ncc7xrvEOC.

53.     Activision is headquartered in California (see https://craft.co/activision), and SidAlpha routinely makes videos about them. See https://www.youtube.com/playlist?list=PLpL3n7W6QqgAAaoK_f8TUWtiib0lj7Q0V.

54.     Blizzard Entertainment is headquartered in California (see https://craft.co/blizzard-entertainment), and SidAlpha routinely makes videos about them. See

https://www.youtube.com/playlist?list=PLpL3n7W6QqgBURgFLw_pWZdK71xf3BXrd.

55.     Riot Games is headquartered in California (see https://craft.co/riot-games), and SidAlpha occasionally makes videos about them. See https://www.youtube.com/playlist?list=PLpL3n7W6QqgA_inJVo3cEv46jmmXOkf15.

56.     IGN is a video game news website headquartered in California[11], and SidAlpha occasionally makes videos about them. See https://www.youtube.com/playlist?list=PLpL3n7W6QqgA_inJVo3cEv46jmmXOkf15.

57.     The list goes on and on. Clearly, SidAlpha's channel is just as "expressly targeted" at California as Brand Technology's website is. So there is no good reason why I do not have at least arguable jurisdiction (enough to at least get jurisdictional discovery) in this district.

58.     Then again, as I mentioned earlier, the Court completely ignored my reference to Mavrix v. Brand last time because it is determined to find a lack of jurisdiction by any means necessary.

**The idea that I should be required to use "geolocation technology," specifically, in order to establish personal jurisdiction is preposterous.**

59.     In support of its stubborn determination to find a lack of jurisdiction by any means necessary, the Court states that "[t]here is no indication in Plaintiff's papers that he previously attempted to trace Defendant's IP address or other information to a California address." In other words, unless I use geolocation technology, specifically, I cannot prove jurisdiction.

60.     This finding is, in a word, preposterous. That's like saying that a prosecuting attorney cannot prove someone guilty of murder unless they use DNA forensic evidence specifically, to hell with fingerprints, ballistic markings, camera footage, eyewitness accounts, or any other type of evidence, or saying that a citizen necessarily violates "stop and identify" laws if they merely verbally tell an officer their name rather than physically produce their State ID like the officer personally wants.

61.     I should not even have to explain why this is such a ridiculous finding. I humbly ask the Court to read its own words out loud and see if that doesn't make it realize just how ridiculous they are.

62.     What I will say is that a party's IP address is not definitive proof of their geographic location. It used to be, but not anymore. This is due to the rise in recent years of virtual proxy networks (or

---

11  See https://corp.ign.com/press ("IGN is headquartered in Los Angeles, with offices in San Francisco").

VPNs for short), which enable users to appear from a different IP address than that which corresponds to their real-life geographic location. A simple google search can explain what VPNs do, so I will not go into elaborate detail here, but suffice it to say that this is not probative evidence of his location, let alone the only valid means of proving his location.

63.     For that matter, does the Court even know, exactly, what "geolocation technology" even is? If it knew, I highly doubt it would be ridiculing me for my alleged failure to utilize it (I say "alleged" for reasons that will hopefully become apparent in a minute). Here is an article briefly explaining what geolocation technology is and what it does:

https://www.khanacademy.org/computing/computers-and-internet/xcae6f4a7ff015e7d:online-data-security/xcae6f4a7ff015e7d:user-data-tracking/a/geolocation

> "The Internet is global, yet it can help us find the services, products, and events near us. Where's the nearest bank? What restaurants will deliver to me? Which of my friends live in the area? What bus will get me to my destination?
> To answer those questions, a program needs to know a user's **geolocation**: an approximate latitude and longitude describing their geographic location."

64.     That being said, how exactly does the Court expect me, specifically, to have access to geolocation technology that I could conceivably use to track him? Obviously, such technology is way outside of my reach.

65.     But you know who *would* have that kind of technology, and who most likely has geolocation records that can tell me where SidAlpha is? Google! Which is precisely who I am trying to subpoena the information from in the first place!

66.     In other words, the Court is ridiculing me for failing to attempt to use geolocation technology to locate SidAlpha as an excuse for why it won't let me ***use geolocation technology to locate SidAlpha!*** At this point, the Court might as well be saying "I'm not going to issue a subpoena because the Plaintiff hasn't attempted to issue a subpoena."

**I am not guilty of a failure to prosecute, and to impose such a sanction on me would be an egregious violation of my constitutional rights, effectively punishing me for *this court's* procrastination, which I cannot control.**

67.     Another absolutely preposterous ruling by this Court is its threat to have the case dismissed when it said "the court will issue a report and recommendation that the case be

dismissed without prejudice for failure to prosecute."

68.    Failure to prosecute is, to put it mildly, not appropriate here. Dismissal for failure to prosecute is a sanction that is properly imposed when the Plaintiff, through his own inaction, fails to take reasonable steps to bring the case current. That is clearly not what is happening here. I have indeed been very diligent in attempting to get this case moving. Rather, it is the Court, not me, who has actively blocked my attempts to subpoena the Defendant's name and address from YouTube at every turn.

69.    To sanction me for failure to prosecute in this case would be tantamount to a criminal court holding a defendant in contempt for failure to appear, not because that defendant legitimately flew the coup after being released on bail, but because, when the Defendant showed up for court, a gang of armed police officers met him at the door and threatened to shoot him if he attempted to go in! And then the judge held him in contempt for failure to appear over *that*!

70.    That is basically what this Court is threatening to do here. It is not my fault that the defendant hasn't been served with process yet. It is the Court's lack of diligence, not mine, which has caused this delay. I should not be punished for the court's incompetence.

**Dismissal, even without prejudice, would be unduly prejudicial at this stage.**

71.    For the sake of argument, let's assume that jurisdiction is, in fact, wanting in this case, and that dismissal would be proper. Even then, we should wait until after jurisdictional discovery before we do so.

72.    This is because I legitimately have no way of tracking SidAlpha except through this subpoena (because, as I established earlier, VPNs make IP addresses unreliable for tracking people in the modern era), I would have to refile in the proper court in order to get the subpoena. But without the subpoena, I have no way of knowing what the "proper court" is. This would put me in an impossible Catch-22.

73.    But imagine if the Court were to accept that it has arguable jurisdiction, and proceed with the subpoena accordingly. YouTube responds to the subpoena and hands over his name and address. He then gets served with process and subsequently moves to dismiss for lack of personal jurisdiction. This motion to dismiss gets granted, and the case is dismissed without prejudice.

74.     But at least this time, because I now know his address, at least now, I know exactly which Court I need to re-file in, so I am not effectively deprived of my right to my day in Court in its entirety simply due to the most ridiculous of technicalities.

75.     Besides, even if I filed the suit, in the first instance, in another court which undeniably had personal jurisdiction over him (somehow), but I still needed the subpoena anyway, the case would still have to be domesticated in this Court in order for YouTube to be served with the subpoena! So why add this pointless extra step? Nobody's due process rights are being violated by me initially filing in California, since the case would just end up here anyway.

**The Court seems hell bent on finding a lack of jurisdiction anyway. This is evidence that the Court has prejudged the case and therefore should recuse.**

76.     It honestly seems that this Court is just hell bent on deciding that this case should be thrown out for lack of jurisdiction. It honestly feels like the court is walking on eggshells around its own logic to justify itself. Evidence of this prejudging of the case include, but is not limited to, the following:

(a)     The Court refuses to conduct jurisdictional discovery, even though that is precisely the "other grounds" that GJG v. SJ was reversed and remanded on. Instead, it never even paid lip service to the prospect of jurisdictional discovery, suggesting that it doesn't *want* to have jurisdiction over this case.

(b)     The Court cites Calder v. Jones as controlling precedent, but then finds Calder to be inapposite. Those two findings cannot possibly both be true at the same time. How can Calder be both controlling and inapposite at the same time? That is literally a paradox of Schrödinger's cat proportions.

(c)     It consistently ignores binding precedent like Mavrix v. Brand in favor of non-binding district court opinions *that were already overturned*, like GJG v. SG and DFSB Kollective Co. v. Bourne. It doesn't even attempt to find Mavrix inapposite; it just doesn't mention Mavrix at all!

77.     The Court must recuse itself if its impartiality might reasonably be questioned. See 28 USC § 455. Actual partiality is not required; only the reasonable appearance of partiality is

required. See Liljeberg v. Health Services Acquisition Corp., 486 US 847 (1988). Moreover, the right to an impartial judge is so fundamental that it can "never be treated as harmless error." Arizona v. Fulminante, 499 US 279, 308 (1991) (citing Tumey v. Ohio, 273 U.S. 510 (1927)).

**Relief Requested**

78.    For all of these reasons and more, I once again ask the Court to please issue the subponea which I provided in Dkt. 19-1. This is not as complicated as the Court is making it seem.

**CONCLUSION**

79.     In conclusion, the Court's rulings up to this point heavily imply that it is actively looking for an excuse to throw the case out by any means necessary, merits be damned. It took an unreasonably long time to finally get around to ruling on the in forma pauperis application (see Dkt. 9). From there, the Court asked me to show cause that it has personal jurisdiction. I did that (see Dkt. 13), showing a multitude of grounds for jurisdiction, each of which would independently give jurisdiction to this Court, but then the Court proceeded to completely ignore half of them, with some arguments still ignored even after reconsideration. Then, it effectively does the equivalent of saying it will not issue a supbonea because I haven't attempted to issue a subpoena yet.

80.     These arbitrary reasons suddenly make sense if the Court has a grudge against me and is just looking for an excuse – any excuse – to throw the case out by any means necessary. But if that is the case, that is grounds for recusal because it shows that the Court has prejudged the case.

81.     Wherefore, premises considered, I respectfully request that the motion for issuance of subpoena duces tecum be granted.

So requested on this, the 14th day of March, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)