David Stebbins (pro se Plaintiff)    123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947    acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                              PLAINTIFF

VS.                              Case 4:23-cv-00321-DMR

SYDNEY REDFIELD, d.b.a. SIDALPHA                                DEFENDANTS

**BRIEF/MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR DEFAMATION #3**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Brief/Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on the Issue of Liability for Defamation #3 in the above-styled action.

## I: TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| I: | TABLE OF CONTENTS | i |
| II: | TABLE OF AUTHORITIES | ii |
| III: | FACTS OF THE CASE | 1 |
| IV: | SUMMARY OF ARGUMENT | 2 |
| V: | ARGUMENT | 2 |
| | V-1: Standard of Review | 2 |
| | V-2: Defamation by Omission | 3 |
| | V-3: The Defendant's Position | 4 |
| | V-4: The re-aggravating factor is not "genuinely" disputed. | 5 |
| | V-5: The re-aggravating factor is irrelevant. | 6 |
| | V-6: Refusal to Retract | 8 |
| VI: | RELIEF REQUESTED | 8 |
| | VI-1: Declaration of Liability & Malice | 8 |

|  |  |  |
|---|---|---|
|  | VI-2: Injunctive Relief | 9 |
|  | VI-2-A: Injunction #1: Remove the slanderous content. | 9 |
|  | VI-2-B: Injunction #3: Convince everyone of the truth. | 9 |
|  | VI-2-C: Injunction #3: End all related harassment. | 10 |
|  | VI-2-D: How violations of injunctions should be identified. | 10 |
| VII: | CONCLUSION | 11 |

## II: TABLE OF AUTHORITIES

**Rules & Statutes**                                                                 **Page(s)**

- 11 USC § 523                                                                              9
- 17 USC § 512                                                                              1
- Fed.R.Civ.P. 45                                                                           6
- Fed.R.Civ.P. 56                                                                           2
- Volokh, E. (2021) "Libel by Omission of Exculpatory Legal                                 4
  Decisions" Notre Dame Law Review, 97(1), 351–355.

**Case Law**                                                                         **Page(s)**

- Diesen v. Hessburg, 437 N.W .2d 705 (Minn. Ct. App. 1989)                                 4
- Liebeck v. McDonald's                                                                     9
- Matsushita v. Zenith, 475 US 574 (1986)                                                   3,5,6
- Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978)                                         4
- Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768 (2005)                                      4
- Morse v. Fusto, 804 F.3d 538 (2d Cir. 2015)                                               3
- Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011)                                     3
- Toney v. WCCO, 85 F.3d 383 (8th Cir. 1996)                                                3
- Verity v. USA TODAY, 436 P. 3d 653 (2019)                                                 4

### III: FACTS OF THE CASE

1. On February 12, 2022, defendant published a video about me, dedicated to smearing me ("the smear video"). See https://www.youtube.com/watch?v=WB-Xd1qDKIY. During the smear video, while discussing my DMCA Takedowns that he considered to be invalid, he claimed that one of the people I had issued a DMCA Takedown against – who goes by the alias xArtemisWolf – had accumulated three copyright strikes on her YouTube channel and therefore had her channel terminated pursuant to 17 USC § 512(i)(1)(A). See timestamp 7:23 – 7:39. However, less than 24 hours after xArtemisWolf's channel was taken down, she simply created another one. In doing so, she undid 99.99% of the harm inflicted upon her by me, legally or otherwise, in an exceptionally short amount of time. The Defendant did not include this in his smear video.[1]

2. Prior to publishing the smear video, I contacted the defendant over private email and asked him politely to hear my side of the story privately before judging me and running my name through the mud. He declined to do so with no explanation given. See **Exhibit A**.

3. Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation." See **Exhibit B**. During the aforementioned conversation regarding retraction, he admitted that he knew that xArtemisWolf had created a new channel less than 24 hours after her first one was deleted, but instead insisted he was justified in omitting that fact, solely based on principle. See **Exhibit C**.

4. After I filed this defamation lawsuit, the defendant posted a new video reacting to the complaint ("the lawsuit reaction video"). See https://www.youtube.com/watch?v=3CbgDzEkkn8. In this video, he admitted that this mitigating factor was true, but insisted that it was "entirely irrelevant" due to the fact that she still permanently lost some private videos which were purportedly of "a very personal nature." This is the first time I have ever heard anyone mention these supposed private videos.

5. At the time that I filed the complaint in the original complaint, her second channel was

---

[1] This is proven by Redfield's own admission. See lawsuit reaction video at timestamp 15:32 – 16:51, where he says ("this second channel is still active to this day. Yes it is, which is also entirely irrelevant... The videos, which included a great deal of private archived videos of personal nature, were permanently removed").

still publicly visible. However, in April of 2023, she was involved in a scandal were some of her colleagues publicly accused her of bestiality. Whether those accusations are true or not, I don't know and don't care. Nevertheless, she ultimately ended up deleting all of her social media accounts of her own accord, this time for reasons that had nothing to do with me. See https://www.youtube.com/watch?v=tqBmpZ0XbCM.

## IV: SUMMARY OF ARGUMENT

6.     The defendant has admitted to lying by omission. He insists that the omitted mitigating factor is "entirely irrelevant," but that is a question of law and therefore can be resolved on summary judgment. Moreover, by his own admission, the mitigating factor's lack of relevance is expressly predicated on the truth of a certain re-aggravating factor, and the likelihood of him being able to prove that to be true is one in a million, which does not create a "genuine" dispute of material fact for purposes of summary judgment.

7.     Even if he could prove it, he is still lying by omission when he omitted the mitigating factor. All that means is that, during the smear video, he should have disclosed ALL of the facts, the original channel termination, the mitigating factor, and the re-aggravating factor, all in equal measure.

8.     Therefore, I am entitled to judgment as a matter of law on the issue of liability for Defamation #3. Upon granting this motion, the only thing left to litigate regarding Defamation #3 is the extent of the damages.

## V: ARGUMENT

9.     For the following reasons, I am entitled to judgment as a matter of law.

### V-1: Legal Standard

10.     "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).

11.     There are two ways for a movant to resolve a factual dispute on summary judgment: Either show that the disputed fact is immaterial, or show that the factual dispute is not "genuine," that is, that there is nothing more than mere metaphysical doubt as to its truthfulness. See

Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586 (1986) ("[T]he issue of fact must be genuine. When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). In other words, if the defendant has only a one in a million chance of being able to produce any admissible evidence to support his factual contention, summary judgment is still appropriate, even if it isn't literally impossible for him to prove it.

### V-2: Defamation by omission

12. Defamation by omission – that is, the legal theory that a defendant can be liable for defamation, even if everything he said was technically correct, if he omits certain mitigating factors, either with the intention, or in reckless disregard for the risk, of leaving his audience with a false impression that would not have happened had the omitted mitigating factors been stated, is still liable for defamation to the same extent as if he had outright lied directly – is indeed a valid theory for imposing liability for defamation. Although, to my knowledge, the State of Idaho has not issued any clear case law on this question, they also have not issued any case law to my knowledge that weighs against this legal theory either. Meanwhile, nearly every jurisdiction in the United States that has set precedent on this question has ruled that, yes, it is indeed a valid theory for defamation liability that the defendant lied by omission.

    (a)    See Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) (finding that the plaintiff stated a claim upon which relief can be granted when the news station lied by omission by failing to disclose that the underlying sexual abuse occurred between two fouryear-old boys, thereby leading audiences to believe that the daycare workers were directly and personally engaging in the sexual abuse).

    (b)    See also Morse v. Fusto, 804 F.3d 538, 549 n.8 (2d Cir. 2015) ("[T]he law of libel has long recognized that omissions alone can render a statement false").

    (c)    See also Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 387 (8th Cir. 1996) ("[A] defendant does not avoid liability by simply establishing the truth of the individual statement(s); rather, the defendant must also defend ... the omission of certain facts").

(d)     See also Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) (actionable libel found where a newspaper selectively published that the Plaintiff was with her assailant's husband, implying they were having an affair, when in fact the two were meeting with multiple other people in an entirely non-sexual setting).

(e)     See also Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768, 776 (2005) (Washington Supreme Court holding that "In a defamation by omission case, the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts," thereby acknowledging that defamation by omission is indeed a valid legal theory to recovery).

(f)     See also Diesen v. Hessburg, 437 N.W .2d 705, 709 (Minn. Ct. App. 1989) ("There may be defamation … where known facts are omitted, which could have changed the defamatory implication of the article").

(g)     See also Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions" Notre Dame Law Review, 97(1), 351–355.

13.     Even Idaho – where this case will most certainly end up once the pending Motion to Transfer Case (Dkt. 65) is granted – recognizes defamation by omission, specifically as a subset of "defamation by implication." See Verity v. USA TODAY, 436 P. 3d 653, 666 (2019) ("[W]e hold that defamation by implication arises" when the defendant "creates a defamatory implication by omitting facts"). If this case is ultimately transferred to Idaho, that case law becomes binding precedent, so it is especially worthy of note.

14.     Therefore, if I can prove that the mitigating factor was relevant and that the defendnat's omission of that fact left his audience with a false impression, I can still recover against the defendant on the third count of defamation.

### V-3: The Defendant's Position

15.     The Defendant has taken a very specific position regarding Defamation #3. He admits that the mitigating factor is true. He admits that he omitted the mitigating factor in his smear video. Instead, he insists that the mitigating factor is "entirely irrelevant," but said lack of irrelevance is expressly predicated on the truth of a certain re-aggravating factor (that Artemis

still permanently lost several private videos that were of a personal nature to her).

16.     This is important because, in asserting this re-aggravating factor, he is effectively admitting that, but for this re-aggravating factor, the mitigating factor does indeed become relevant to his attempts to smear me. But for the re-aggravating factor, the defendant admits that he would otherwise have lied by omission when he failed to report the mitigating factor.

17.     This means that, if the defendant cannot prove the re-aggravating factor to be true, or even come forth with any admissible evidence at all to suggest it might be true, then he is liable for defamation *by his own admission*.

18.     With that said, let us analyze the significance of this re-aggravating factor.

### V-4: The re-aggravating factor is not "genuinely" disputed.

19.     It is the defendant who holds the burden of proof on the re-aggravating factor. I may hold the burden of proof on the prima facie elements of defamation (including the truth of the omitted, mitigating factor), but those things are admitted by the defendant in this case.

20.     It's like a murder case. If the government accuses the defendant of murder or battery, but the defendant claims self defense, normally, the burden of proof lies on the defendant to prove self defense. But if the government instead claims that the defense of self-defense is lost because, for example, the defendant used way more force than was necessary to repel the force issued against him, then the burden of proof reverts to the government to prove the counter-defense of excessive force. Such should be the case here.

21.     However, if the defendant only has a one a million chance of proving the re-aggravating factor to be true, then I am still entitled to partial summary judgment because the fact is not "genuinely" disputed. See Matsushita, supra.

22.     The re-aggravating factor is that (A) Artemis had multiple private videos on her old channel that were of a "personal nature," and (B) those videos were permanently and irretrievably lost.

23.     First of all, why didn't he mention this over private email when I directly asked him why he didn't mention the mitigating factor during his smear video? That seemed like a perfect opportunity to bring it up. Why did he wait until after I had filed the defamation lawsuit to

mention the re-aggravating factor for the first time? This heavily implies that it is a "pretext" (a made-up excuse created in response to litigation). The concept of pretext most commonly comes up in employment discrimination cases, but it's important here too.

24.     Barring that, how does he plan to prove it to be true? This is something that the defendant himself almost certainly does not have personal knowledge of. If he's basing his statements off of messages sent to him by Artemis over social media, that's inadmissible hearsay. Therefore, in order to prove the re-aggravating factor to be true, he's going to have to call Artemis as a witness, and the odds that he'll be able to do that are one in a million.

25.     First, locating the defendant will most likely be impossible. Remember that she has deleted all of her social media accounts amid accusations of bestiality. This will make it virtually impossible to learn of her whereabouts and therefore serve a subpoena on her. See Stebbins v. CMDR ImperialSalt, No. 34, Case 3:22-cv-04082-AGT (NDCA Mar 1, 2024) ("[S]oon after Stebbins filed this lawsuit, Jones deleted his YouTube channel, meaning Stebbins likely cannot obtain more information on Jones's whereabouts from YouTube").

26.     Even if the defendant could locate her, there is a very high probability that she cannot be made to testify if she doesn't want to. A third party can only be compelled to testify if they live or work either within 100 miles of the courthouse where the trial is held or within the same state as the courthouse. See Fed.R.Civ.P. 45(c)(1). There is a very high chance she may refuse to testify, as to do so would expose her true identity to everyone who would harass and threaten her for her alleged zoophilia.

27.     This means that the Defendant almost certainly will not be able to prove the re-aggravating factor to be true. This, combined with his previous admission that he did commit defamation by omission were it not for this re-aggravating factor, means that I am entitled to judgment as a matter of law, as the truth of the re-aggravating factor is not "genuinely" disputed as set forth by Matsushita, supra.

**V-5: The re-aggravating factor is irrelevant.**

28.     Even if her testimony could be secured, I am still entitled to judgment as a matter of law on the issue of liability because the re-aggravating factor does not, as a matter of law, render the

mitigating factor "entirely irrelevant."

29. First, it is unclear exactly how much monetary harm Artemis has suffered from the alleged loss of these personal videos. It is black letter law that courts do not award damages just for hurt feelings[2], nor do they award damages for sentimental or personal value. For example, if a bully in school willfully and maliciously smashes another child's coffee cup, valued at only $1, only to later find out that this coffee cup was the last thing that child's grandfather gifted him right before he died, that latter detail is not going to increase the plaintiff's compensatory damages. The plaintiff still suffered only $1 in compensatory damages. So, that being said, just how much damages did Artemis actually suffer as a result of these lost videos – not the loss of her first channel, but specifically the private videos themselves – when they were supposedly irretrievably lost?

30. Second, even if this re-aggravating factor is proven to be true, and the damages can be proven to be more than nominal, that still doesn't render the mitigating factor "entirely irrelevant" under defamation law. All that means is that the re-aggravating factor was also relevant, not that the mitigating factor was not relevant. That means that SidAlpha had a duty to disclose *all* relevant factors – the original act, the mitigating factor, and the re-aggravating factor, all in equal measure – in the smear video, and allow his audience to decide for themselves if the mitigating factor mitigates any of my culpability and, if so, whether and to what extent the re-aggravating factor restores any of that culpability.

31. The only way SidAlpha should be allowed to prevail on his claim that my mitigating factor is "entirely irrelevant" is if he not only proves the re-aggravating factor to be true, but also proves that, if he had disclosed all of these factors (including the mitigating and re-aggravating factors), nearly all of his viewers would have had the exact same opinion about me after watching that hypothetical video as they did after watching his *actual* slander video. Not just mostly the same, but exactly the same.

32. Think about it this way: In criminal appeals, to overcome the presumption of harmless error, it is not necessary that the defendant show that, but for the error in the district court, the defendant would have been fully exonerated of his charges. The defendant need only show that,

---

2   Emotional distress can be recoverable, but only if it is medically significant, like my damages in the instant case.

but for the error, the <u>outcome</u> of his case would have been <u>different</u>. In that circumstance, even a reduced sentence still counts as a <u>different</u> <u>outcome</u> for purposes of overcoming the presumption of harmless error, and even a reduction of one day still counts as a reduced sentence.

33.     The Court should hold likewise here: If even a marginal number of people would have had even slightly better opinions about me if the Defendant had properly disclosed the mitigating and re-aggravating factors, then the mitigating factor is not "entirely irrelevant," which means he had a duty to disclose it, and his failure to so disclose constitutes lying by omission and, therefore, slander.

34.     See, when the defendant insisted that the mitigating factor was "entirely irrelevant," what he actually meant was... it did not change his personal, entirely subjective and entirely arbitrary opinion about how much of a scumbag I was. But that, that right there, is what is truly "entirely irrelevant" under defamation law.

### V-6: Refusal to Retract

35.     Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation."

36.     This satisfies my legal duty to demand retraction before suing. Therefore, I am now eligible to recover general damages, such as for emotional distress and loss of reputation.

### VI: RELIEF REQUESTED

37.     Because I am entitled to judgment as a matter of law on the issue of liability, I therefore request the following relief:

### VI-1: Declaration of Liability and Malice

38.     First, I ask that the Court declare that the Defendant did in fact slander me when he publicly stated that I had Artemis's channel terminated but failed to disclose that this damage had been almost completely undone less than 24 hours later.

39.     I also ask that the Court declare that this slander was committed, and the harm that resulted from it was inflicted, willfully and maliciously by the defendant. The effects of this declaration are two fold: First, it opens up the possibility of me recovering punitive damages

against the defendant, and second, it prohibits the defendant from dissolving his damages liability to me in bankruptcy under 11 USC § 523(a)(6).

40. Upon this declaration being issued, the only thing left to litigate, in regards to Defamation #3, are damages.

### VI-2: Injunctive Relief

41. I then ask the Court to issue the following injunctions against the Defendant:

#### VI-2-A: Injunction #1: Remove the slanderous content.

42. First, he should be ordered to remove any/all references to Artemis having her channel terminated by me from his YouTube channel, his Discord server, his X account, and all other websites in which he has any presence.

43. Before that happens, however, I respectfully ask that the Court download1 a copy of the smear and lawsuit reaction videos, and state in its order that it has done so, as they are certainly relevant evidence for the other counts of defamation that don't currently have motions for partial summary judgment pending about them.

#### VI-2-B: Injunction #3: Convince everyone of the truth.

44. I then ask that the defendant be ordered to publicly correct the statements he made about me in such a way that ensures that my reputation is fully restored. He should not be required simply to tell everyone that he was wrong, but to *actually convince them*, to the point where literally everyone on Earth, with no exceptions, has either never heard of this controversy in the first place, or their must subjectively believe that I am the blameless victim of harassment, doxxing, and defamation (and that SidAlpha willingly and maliciously participated in same), and absolutely nothing else.

45. If that sounds impossible, it isn't. It may be difficult, and it may be expensive, but it can be done. It has happened before. The most prolific example of this sort of "reputation repair" (for lack of a better term) is the highly controversial case of Liebeck v. McDonald's in New Mexico. For years and years during the 1990s and 2000s, Ms. Liebeck was treated as nothing more than a greedy plaintiff who sued McDonald's over the pettiest of torts, suing for millions of dollars for what should have been only a couple hundred bucks in actual damages. But nowadays, the

record has been set completely straight. Nowadays, you almost never hear the original "smear" story unless it is specifically setting up to explain how that original story was false.

46.     The same is possible here. It may take a long time for the defendant to do it, but that just means he'd better get started. Distributing the message may be expensive[3], but that alone doesn't excuse legal obligations. If it did, debtors would be able to get out of paying off their debts simply because they lost their jobs. I'm not talking about being judgment proof; I'm talking about the Court officially recognizing that the debtor is absolved of his official duty to repay the debt! Obviously, that would be absurd, and the Court should hold likewise here.

VI-2-C: Injunction #3: End all related harassment.

47.     Last but not least, I ask that SidAlpha be ordered to personally and by any means necessary bring about an end to any/all harassment made against me. Again, I am not asking that he merely be ordered to post a video telling his viewers not to harass me, but to personally ensure, under his own power, that the harassment ends.

48.     If this also sounds impossible for him to do, then maybe he should have thought about that before he was publishing his knowingly false smear video about me. This is not a case of "there's nothing the defendant can do to make people leave the plaintiff alone," because there *was* something he could have done: He could have simply not posted the smear video in the first place! At this point, he has made his bed and now he should be made to lie in it.

VI-2-D: How violations of injunctions should be identified.

49.     In practice, the primary means through which the second and third injunctions would manifest would be to hold SidAlpha in contempt of court (complete with fines payable to me and coercive confinement) every time someone else harasses me, or posts any defamatory material about me, in connection with this controversy. After all, if someone continues to harass me, that is clearly evidence that SidAlpha has not fully complied with the injunctions to convince everyone that I'm the blameless victim and get everyone to stop harassing me, is it not?

50.     Unrelated defamation and harassment should also constitute a violation of these

---

3  He probably can't just rely on the YouTube algorithm to distribute the correction. He'll probably have to subpoena the locations of everone who watched the video – all 180,00+ of them – and personally sit each of them down, individually, in order to truly ensure that this injunction is complied with.

injunctions, as long as it is clear that the other party is only creating these new accusations against me as a substitute for the old accusations they are no longer allowed to spread. In other words, if someone were to realize that they could not continue this exact line of defamation, but still believes that I am a scumbag, so they come up with something else, no matter how out-of-the-blue it may be, to continue to harass me and claim that it's unrelated, the defendant should still be held in contempt of court for that.

51.     If the contempt is punishable by fine, then those fines should be payable to me, rather than to the court. After all, the whole point of these injunctions is to put an end to the harm being inflicted on me. Therefore, I should be the one compensated for the harm that is continued to be inflicted on me.

## VII: CONCLUSION

52.     Wherefore, premises considered, I respectfully pray that this Motion for Partial Summary Judgment on the Issue of Liability for Defamation #3 be granted, and for any other relief to which I may be entitled.

So requested on this, the 30th day of September, 2025.

*/s/ David Stebbins*
David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
