David Stebbins (pro se)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 204-6516
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                                  PLAINTIFF

VS.                                            Case 4:23-cv-00321-DMR

SYDNEY REDFIELD, d.b.a. SIDALPHA                                                    DEFENDANTS

## BRIEF/MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR DEFAMATION #7, #8, AND #9

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Brief/Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on the Issue of Liability for Defamation #7, #8, and #9 in the above-styled action.

### I: TABLE OF CONTENTS

| Sections | Page |
|---|---|
| I. TABLE OF CONTENTS | i |
| II. TABLE OF AUTHORITIES | ii |
| III. FACTS OF THE CASE | 1 |
| IV. SUMMARY OF ARGUMENT | 2 |
| V. ARGUMENT | 2 |
| V-1: Defamation by Omission and the Republication Rule | 3 |
| V-2: The undisputed false statements. | 5 |
| V-3: Opinion vs Fact | 6 |
| V-4: The Defendant buried his head in the sand. | 7 |
| V-5: Refusal to Retract | 8 |

| | | |
|---|---|---|
| VI. | RELIEF REQUESTED | 8 |
| | VI-1: Declaratory Relief | 8 |
| | VI-2: Injunctive Relief | 8 |
| |     VI-2-A: Remove the slanderous content. | 9 |
| |     VI-2-B: Repair my reputation. | 9 |
| |     VI-2-C: End all related harassment. | 10 |
| |     VI-2-D: How violations of injunctions should be identified. | 10 |
| | VI-3: Other Relief | 11 |
| VII. | CONCLUSION | 11 |

## II: TABLE OF AUTHORITIES

| **Statutes & Rules** | **Page(s)** |
|---|---|
| • Fed.R.Civ.P. 56 | 2 |
| • "Common Questions about Slander & Libel" from the Sacramento County Public Law Library – https://saclaw.org/resource_library/common-questions-about-slander-libel | 5 |
| • "Defamation Publication: Am I Liable For a Defamatory Republication?" by Minc Law – https://www.minclaw.com/legal-resource-center/what-is-defamation/am-i-liable-for-republishing-defamatory-statements/ | 5 |
| • Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions" Notre Dame Law Review, 97(1), 351–355. | 4 |

| **Case Law** | **Page(s)** |
|---|---|
| • Diesen v. Hessburg, 437 N.W .2d 705 (Minn. Ct. App. 1989) | 4 |
| • Liebeck v. McDonald's | 9 |
| • Matsushita v. Zenith, 475 US 574, 586 (1986) | 3 |
| • Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) | 3 |
| • Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768 (2005) | 4 |

- Morse v. Fusto, 804 F.3d 538 (2d Cir. 2015) ... 3
- Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) ... 3
- Toney v. WCCO, 85 F.3d 383 (8th Cir. 1996) ... 3
- Verity v. USA Today, 436 P. 3d 653 (2019) ... 4

## III: FACTS OF THE CASE

1.  On February 12, 2022, the Defendant posted a video to his YouTube channel dedicated to smearing me ("the smear video"). See https://www.youtube.com/watch?v=WB-Xd1qDKIY.

2.  Prior to publishing the smear video, I contacted the defendant over private email and asked him politely to hear my side of the story privately before judging me and running my name through the mud. He declined to do so with no explanation given. See **Exhibit A**.

3.  During the smear video, one of the statements the Defendant made about me was describing me as "being aggressive despite his always demanding civility from others" (see timestamp 44:52– 44:56) as well as describing me as "a person that hurls insults threats and curses at the drop of a hat and then demands civility from others" (see timestamp 1:00:36 – 1:00:42).

4.  Another statement he made about me was "no critique of him or his channel can be suffered, tolerated or allowed to exist unless its sole purpose is to praise him, because anything other than abject praise is viewed to be harassment and doxing" (see timestamp 1:02:22 – 1:02:34).

5.  In fact, nothing could be further from the truth. There are numerous instances on my YouTube channel, visible to the public, where I engage in civil discourse with people who disagree with me. See **Exhibit B** for just a few examples, with screenshots of the comments and links to them for the Court to see them with its own two eyes.

6.  In fact, there are even a few instances where someone else was defending me, and I swooped in and told the guy defending me to knock it off! See **Exhibit C** for just two examples.

7.  Really, in the few instances that the Defendant mentioned in his smear video where I purportedly acted aggressively, that was only because the people I was engaging with were themselves acting aggressively, and they provoked me into that response. For example, one person I interacted with, who goes by the alias "Skibbidy Dibbity," sent me numerous, extremely vulgar emails, cussing me out and calling me every vile name he could think of, including but not limited to "idiot," "sperg," "lunatic," "coward," "disgrace," "loser," "manchild," and "pathetic douche." See **Exhibit D**. Meanwhile, another user who goes by the alias "InitiativeKookie" spent

*literally multiple years* creating multiple new accounts on YouTube, Discord, and Reddit for the sole purpose of sending me numerous, vulgar, and harassing messages! See **Exhibit E**. Frankly, considering all I've been through, it's inconceivable that a person in my shoes *wouldn't* snap and begin acting aggressively!

8.     The Defendant mentioned none of these things in his smear video. Instead, he simply mentioned how I, dealing with Skibbidy Dibbity, "end[ed] the conversation by saying 'By all means issue that DMCA Counter Notification. By all means, give me an excuse,'" (see smear video at timestamp 42:11 – 42:17), completely omitting the multitude of harassment and slurs I was forced to endure that drove me to that point.

9.     Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation." See **Exhibit F**.

10.     After filing this lawsuit, the Defendant made a video reacting to said lawsuit ("the lawsuit reaction video"). See https://www.youtube.com/watch?v=3CbgDzEkkn8. During that video, he declined to comment substantially on Defamation #7 or #8 (see timestamp 26:41 – 26:59) but in response to Defamation #9, he insisted that his statements mentioned in ¶ 8 above were just his opinion. See timestamp 26:59 – 27:31 ("I formulated my *opinion* based on the information that *did* have" emphasis in original).

## IV: SUMMARY OF ARGUMENT

11.     The Defendant clearly lied about me in order to harm my reputation. He claimed I have no tolerance for disagreements of any kind, and that I demand civility from others while reciprocating none of that civility myself, when in fact, my YouTube channel is full of example after example of me engaging in civil disagreement with viewers.

12.     Meanwhile, he lied by omission when he showed a few examples of me acting aggressively towards others, while not mentioning that they drove me to that point.

13.     Therefore, the Court should hold that he slandered me in this smear video in regards to Defamation #7, #8, and #9.

## V: ARGUMENT

14. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).

15. There are two ways for a movant to resolve a factual dispute on summary judgment: Either show that the disputed fact is immaterial, or show that the factual dispute is not "genuine," that is, that there is nothing more than mere metaphysical doubt as to its truthfulness. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586 (1986) ("[T]he issue of fact must be genuine. When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). In other words, if the defendant has only a one in a million chance of being able to produce any admissible evidence to support his factual contention, summary judgment is still appropriate, even if it isn't literally impossible for him to prove it.

### V-1: Defamation by Omission and the Repetition Rule

16. Defamation by omission – that is, the legal theory that a defendant can be liable for defamation, even if everything he said was technically correct, if he omits certain mitigating factors, either with the intention, or in reckless disregard for the risk, of leaving his audience with a false impression that would not have happened had the omitted mitigating factors been stated, is still liable for defamation to the same extent as if he had outright lied directly – is indeed a valid theory for imposing liability for defamation. Although, to my knowledge, the State of Idaho has not issued any clear case law on this question, they also have not issued any case law to my knowledge that weighs against this legal theory either. Meanwhile, nearly every jurisdiction in the United States that has set precedent on this question has ruled that, yes, it is indeed a valid theory for defamation liability that the defendant lied by omission.

   (a)   See Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) (finding actionable defamation when the news station lied by omission by failing to disclose that the underlying sexual abuse occurred between two fouryear-old boys, thereby leading audiences to believe that the daycare workers were directly and personally engaging in the sexual abuse).

(b) See also Morse v. Fusto, 804 F.3d 538, 549 n.8 (2d Cir. 2015) ("[T]he law of libel has long recognized that omissions alone can render a statement false").

(c) See also Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 387 (8th Cir. 1996) ("[A] defendant does not avoid liability by simply establishing the truth of the individual statement(s); rather, the defendant must also defend ... the omission of certain facts").

(d) See also Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) (actionable libel found where a newspaper selectively published that the Plaintiff was with her assailant's husband, implying they were having an affair, when in fact the two were meeting with multiple other people in an entirely non-sexual setting).

(e) See also Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768, 776 (2005) (Washington Supreme Court holding that "In a defamation by omission case, the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts," thereby acknowledging that defamation by omission is indeed a valid legal theory to recovery).

(f) See also Diesen v. Hessburg, 437 N.W .2d 705, 709 (Minn. Ct. App. 1989) ("There may be defamation … where known facts are omitted, which could have changed the defamatory implication of the article").

(g) See also Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions" Notre Dame Law Review, 97(1), 351–355.

17. Even Idaho – where this case will most certainly end up once the pending Motion to Transfer Case (Dkt. 65) is granted – recognizes defamation by omission, specifically as a subset of "defamation by implication." See Verity v. USA Today, 436 P. 3d 653, 666 (2019) ("[W]e hold that defamation by implication arises" when the defendant "creates a defamatory implication by omitting facts"). If this case is ultimately transferred to Idaho, that case law becomes binding precedent, so it is especially worthy of note.

18. Therefore, if I can prove that the mitigating factor was relevant and that the defendnat's omission of that fact left his audience with a false impression, I can still recover against the

defendant on the third count of defamation.

19. Nor does it save the Defendant that he was only relaying to his viewers what his informants told him. This is known as the "Republication Rule," and it is a well-established part of defamation law.

    (a)    See Volokh, supra at 354:

"Under the libel law republication rule, repeating false and reputation-injuring allegations is generally itself libelous, even if the repetition accurately summarizes the allegations: saying 'A said that P stole money from petty cash' is libelous if P didn't steal the money, even if it's accurate that A said that P stole the money."

    (b)    See also https://saclaw.org/resource_library/common-questions-about-slander-libel

"**'I was only repeating what someone else told me!'** This is also not a defense. Under the law, a person who repeats a defaming statement is also liable for defamation"

    (c)    Jackson v. Paramount Pictures Corp., 80 Cal. Rptr. 2D 1, 9 (1998) (citing Ray v. Citizen-News Co. (1936) 14 Cal.App.2d 6, 8-9 (1936)):

"A false statement is not less [defamatory] because it is the repetition ... of statements or allegations that others have made concerning the matter."

    (d)    See also https://www.minclaw.com/legal-resource-center/what-is-defamation/am-i-liable-for-republishing-defamatory-statements/

"a person cannot generally avoid liability for defamation merely because they repeated someone else's words."

    (e)    Seeo also https://www.avvo.com/legal-answers/am-i-guilty-of-slander-or-libel-if-i-repeat-someth-1781534.html

"no. It is no defense that you were merely repeating something that somebody else told you."[1]

20. Therefore, the Defendant cannot avoid liability here simply by insisting that he was

---

1 Normally, I would not use Q&A sites like Quora or Reddit as legal sources. However, in this case, I believe the source is valid, because Avvo is no ordinary Q&A website. Anyone can post a question on Avvo, but only those who are verified by the site as being licensed to practice law in at least one state are allowed to post answers. Because I am citing an answer, rather than a question, that means that this statement necessarily comes from a licensed attorney, and is therefore is just as valid of a legal source as the Minc Law website mentioned above.

merely reposting in good faith whatever his informants were telling him.

### V-2: The undisputed false statemens

21.     Applying the law to the facts of this case, the defendant clearly lied when he said, on multiple occasions, that I am an aggressive, bitter man that demands civility and respect from people while utterly refusing to give it myself. He also clearly lied when he accused me of interpreting anything that isn't unequivocal praise as harassment. There are multiple examples on my YouTube channel unequivocally proving that these statements are false.

22.     While I did act aggressively towards the likes of Skibbidy Dibbity and InitiativeKookie, the defendant lied by omission when he failed to report that these aggressive comments were themselves the result of overwhelmingly vulgar and harassing messages, so much so that it is honeslty inconceivable that someone in my shoes *wouldn't* have reacted the way I did.

23.     Psychologists have a term for this kind of behavior: "Reactive abuse." As I explained in my Complaint, reactive abuse necessarily involves defaming the victim, as it necessarily involves lying (whether by omission or otherwise) in order to portray the victim's behavior as entirely unprovoked.

24.     Therefore, the Defendant is unequivocally guilty of slander when it comes to Counts #7, #8, and #9 of the Complaint.

### V-3: Opinions vs Facts

25.     Regarding Defamation #9, the Defendant insists that his accusations that I lashed out at SkibbidyDibbity and InitiativeKookie were just his opinions. But his accusations against me were not the least bit opinionated. Merely labeling something as your opinion does not make it such, especially when you only apply that label after the defamation is first published and seek to have that label applied retroactively.

26.     The statement that the Defendant made about me was that I sent an email to SkibbidyDibbity "ending the conversation by saying 'By all means issue that DMCA Counter Notification. By all means, give me an excuse." That is not an opinion; I either said that or I didn't. He even showed a screenshot of me making that statement to prove that I did indeed say that. Now, the *implication* that this statement about me creates – that I was not justified in reacting this way –

might have been his opinion, but he never said that in the smear video. He simply said that I made the statement mentioned above and let the audience draw its own conclusions.

27.     However, because he omitted all the bullying by Skibbidy Dibbity – as well as 99% of the literal months and months of harassment I suffered from InitiativeKookie which meant I was already fed up and completely done with that group of people – that meant that the vast majority of his viewers were likely to draw *false* conclusions about me, specifically that my behavior was unprovoked instead of being reactive abuse.

28.     Therefore, his defense that he was merely giving his opinion should fail.

### V-4: The Defendant buried his head in the sand.

29.     I am not a public figure, for reasons I explained in ¶¶ 124-131 of the Complaint. However, even if the Court disagrees with me, and decides that I am a public figure, I can still prove actual malice in this case: Because the Defendant refused to hear my side of the story *privately* (the public argument we had on Twitter doesn't count) before publishing his smear video. See ¶ 2 above. This constitutes burying his head in the sand.

30.     Had he given me a chance to tell my side of the story before he had made up his mind to smear me, I could have explained to him all of the stuff mentioned in this memorandum, and shown him all the contents of Exhibits B-E, just as easily as I provided them as exhibits in this case. Instead, the defendant didn't see the need to hear my side of the story. He outright refused to entertain any evidence that might have conflicted with the judgment he had already made about me in absentia. That, however, is the very definition of "burying his head in the sand" and, therefore, actual malice.

31.     It's obvious why he didn't want to hear my side of the story: Because his mind was 100% made up about me. Nothing I said was ever going to change that. Even now, reading this motion and being aware of all the harassment I've endured and all the examples of me engaging in civil disagreements with people, he is still 100% convinced that I will lash out at anyone who doesn't unequivocally praise me.

32.     However, it is axiomatic that such an attitude does not absolve him of liability for defamation. If anything, it exacerbates said liability.

### V-5: Refusal to Retract

33.     Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation." See ¶ 9 above.

34.     This satisfies my legal duty to demand retraction before suing. Therefore, I am now eligible to recover general damages, such as for emotional distress and loss of reputation.

### VI: RELIEF REQUESTED

35.     Because I am entitled to judgment as a matter of law on the issue of liability, I therefore request the following relief:

### VI-1: Declaratory Relief

36.     First, I ask that the Court declare that the Defendant did in fact slander me when he publicly stated that I demand civility without reciprocating it, that I consider anything that isn't unequivocal praise to be harassment, and that he lied by omission when he showed the supposedly aggressive statements I made but omitted all of the far worse invectives that were hurled at me to provoke me into that response.

37.     I also ask that the Court declare that this slander was committed, and the harm that resulted from it was inflicted, willfully and maliciously by the defendant. The effects of this declaration are two fold: First, it opens up the possibility of me recovering punitive damages against the defendant, and second, it prohibits the defendant from dissolving his damages liability to me in bankruptcy under 11 USC § 523(a)(6).

38.     Third, I ask that the Court declare that this constitutes defamation per se, as it accuses me of acts which make me unfit for my chosen profession of making YouTube videos, specifically being unable and unwilling ot accept good faith criticism and feedback on my content.

39.     Upon this declaration being issued, the only thing left to litigate, in regards to Defamation #7, #8, and #9, are damages.

### VI-2: Injunctive Relief

40.     I then ask the Court to issue the following injunctions against the Defendant:

<u>VI-2-A: Injunction #1: Remove the slanderous content.</u>

41.     First, he should be ordered to remove any/all references to my supposed aggressiveness and/or tolerance for disagreements (or lack thereof) from his YouTube channel, his Discord server, his X account, and all other websites in which he has any presence.

42.     Before that happens, however, I respectfully ask that the Court download1 a copy of the smear and lawsuit reaction videos, and state in its order that it has done so, as they are certainly relevant evidence for the other counts of defamation that don't currently have motions for partial summary judgment pending about them.

<u>VI-2-B: Injunction #2: Repair my reputation.</u>

43.     I then ask that the defendant be ordered to publicly correct the statements he made about me in such a way that ensures that my reputation is fully restored. He should not be required simply to tell everyone that he was wrong, but to actually convince them, to the point where literally everyone on Earth, with no exceptions, has either never heard of this controversy in the first place, or their must subjectively believe that I am the blameless victim of harassment, doxxing, and defamation (and that SidAlpha willingly and maliciously participated in same), and absolutely nothing else.

44.     If that sounds impossible, it isn't. It may be difficult, and it may be expensive, but it can be done. It has happened before. The most prolific example of this sort of "reputation repair" (for lack of a better term) is the highly controversial case of Liebeck v. McDonald's in New Mexico. For years and years during the 1990s and 2000s, Ms. Liebeck was treated as nothing more than a greedy plaintiff who sued McDonald's over the pettiest of torts, suing for millions of dollars for what should have been only a couple hundred bucks in actual damages. But nowadays, the record has been set completely straight. Nowadays, you almost never hear the original "smear" story unless it is specifically setting up to explain how that original story was false.

45.     The same is possible here. It may take a long time for the defendant to do it, but that just means he'd better get started. Distributing the message may be expensive[2], but that alone doesn't

---

2  He probably can't just rely on the YouTube algorithm to distribute the correction. He'll probably have to subpoena the locations of everone who watched the video – all 180,00+ of them – and personally sit each of them down, individually, in order to truly ensure that this injunction is complied with.

Case 4:23-cv-00321-DMR                          -9-                      Motion for Summary Judgment

excuse legal obligations. If it did, debtors would be able to get out of paying off their debts simply because they lost their jobs. I'm not talking about being judgment proof and having no wages to garnish; I'm talking about the Court officially recognizing that the debtor is absolved of his official duty to repay the debt, so even if he gets a job in the future, the creditor still can't garnish his wages because they don't even have a judgment against him! Obviously, that would be absurd, and the Court should hold likewise here.

### VI-2-C: Injunction #3: End all related harassment.

46. Last but not least, I ask that SidAlpha be ordered to personally and by any means necessary bring about an end to any/all harassment made against me. Again, I am not asking that he merely be ordered to post a video telling his viewers not to harass me, but to personally ensure, under his own power, that the harassment ends.

47. If this also sounds impossible for him to do, then maybe he should have thought about that before he was publishing his knowingly false smear video about me. This is not a case of "there's nothing the defendant can do to make people leave the plaintiff alone," because there was something he could have done: He could have simply not posted the smear video in the first place! At this point, he has made his bed and now he should be made to lie in it.

### VI-2-D: How violations of injunctions should be identified.

48. In practice, the primary means through which the second and third injunctions would manifest would be to hold SidAlpha in contempt of court (complete with fines payable to me and coercive confinement) every time someone else harasses me, or posts any defamatory material about me, in connection with this controversy. After all, if someone continues to harass me, that is clearly evidence that SidAlpha has not fully complied with the injunctions to convince everyone that I'm the blameless victim and get everyone to stop harassing me, is it not?

49. Unrelated defamation and harassment should also constitute a violation of these injunctions, as long as it is clear that the other party is only creating these new accusations against me as a substitute for the old accusations they are no longer allowed to spread. In other words, if someone were to realize that they could not continue this exact line of defamation, but still believes that I am a scumbag, so they come up with something else, no matter how out-of-

the-blue it may be, to continue to harass me and claim that it's unrelated, the defendant should still be held in contempt of court for that.

50. If the contempt is punishable by fine, then those fines should be payable to me, rather than to the court. After all, the whole point of these injunctions is to put an end to the harm being inflicted on me. Therefore, I should be the one compensated for the harm that is continued to be inflicted on me.

### VI-3: Other Relief

51. I then ask that the Court award me whatever other relief which it considers necessary to make me whole in this case.

### VII: CONCLUSION

52. Wherefore, premises considered, I respectfully pray that this Motion for Partial Summary Judgment on the Issue of Liability for Defamation #7, #8, and #9 be granted, and for any other relief to which I may be entitled.

So requested on this, the 30th day of September, 2025.

*/s/ David Stebbins*
David Stebbins (pro se)