David Stebbins (pro se Plaintiff)   123 W. Ridge Ave., APT D   Harrison, AR 72601
(870) 212-4947   acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                                    PLAINTIFF

VS.                                             Case 4:23-cv-00321-DMR

SYDNEY REDFIELD, d.b.a. SIDALPHA                                        DEFENDANTS

**BRIEF/MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY FOR DEFAMATION #10**

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Brief/Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on the Issue of Liability for Defamation #10 in the above-styled action.

## I: TABLE OF CONTENTS

| Section | Page |
|---|---|
| I. TABLE OF CONTENTS | i |
| II. TABLE OF AUTHORITIES | ii |
| III. FACTS OF THE CASE | 1 |
| IV. SUMMARY OF ARGUMENT | 2 |
| V. ARGUMENT | 2 |
| V-1: Defamation by omission of exculpatory legal decisions | 3 |
| V-2: It is undisputed that the defendant omitted my charges being dropped from his smear video. | 5 |
| V-3: The defendant buried his head in the sand. | 7 |
| V-4: Refusal to Retract | 8 |
| VI. RELIEF REQUESTED | 8 |
| VI-1: Declaratory Relief | 8 |
| VI-2: Injunctive Relief | 9 |

|   |   |   |
|---|---|---|
|   | VI-2-A: Injunction #1: Remove defamatory content | 9 |
|   | VI-2-B: Injunction #2: Repair my reputation | 9 |
|   | VI-2-C: Injunction #3: Cause harassment to stop | 10 |
|   | VI-2-D: How violations of injunctions should be identified. | 10 |
|   | VI-3: Other Relief | 10 |
| VII. | CONCLUSION | 10 |

## II: TABLE OF AUTHORITIES

| Statutes & Rules | Page(s) |
|---|---|
| • 11 USC § 523(a)(6) | 9 |
| • Fed.R.Civ.P. 56 | 2 |
| • Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions" Notre Dame Law Review, 97(1), 351–355, 354. scholarship.law.nd.edu/cgi/viewcontent.cgi?article=4990&context=ndlr | 4,6 |

| Case Law | Page(s) |
|---|---|
| • Diesen v. Hessburg, 437 N.W .2d 705 (Minn. Ct. App. 1989) | 4 |
| • Garcia v. Puccio, No. 108964/02, 2003 WL 25594218 (N.Y. Sup. Ct. Jan. 6, 2003) | 4 |
| • GD v. Kenny, 15 A. 3d 300 (NJ 2011) | 4 |
| • Klentzman v. Brady, 456 S.W.3d 239 (Tex. App. 2014) | 5 |
| • Liebeck v. McDonald's | 9 |
| • Martin v. Griffin, No. CV 990586133S, 2000 WL 872464 (Conn. Super. Ct. June 13, 2000) | 5 |
| • Matsushita v. Zenith, 475 US 574 (1986) | 2,6 |
| • Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) | 3 |
| • Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768 (2005) | 4 |

- Morse v. Fusto, 804 F.3d 538 (2d Cir. 2015) — 3
- Petro-Lubricant Test v. Adelman, 184 A. 3d 457 (NJ 2018) — 5
- Salzano v. NJ Media Group, 993 A. 2d 778 (NJ 2010) — 5
- Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) — 3
- Toney v. WCCO Television, 85 F.3d 383 (8th Cir. 1996) — 3
- Wiest v. E-Fense, Inc., 356 F. Supp. 2d 604 (ED VA 2005) — 4

### III: FACTS OF THE CASE

1. In November of 2011, I was arrested over, and charged criminally for, a domestic violence allegation. In either late January or early February of 2013, I filed a pro se motion to suppress in that criminal case, asking the judge to suppress evidence of my prior bad acts, emphasizing the prejudice I would suffer if the evidence were introduced and the near total lack of evidence that the prosecution had that I had committed the offense which formed the basis for the contemporary charges. See the concurrently-filed "Request to Take Judicial Notice and for in Camera Review."

2. On February 8, 2025, the prosecution – apparently swayed by my pro se motion to suppress – agreed to stay the proceedings in the case while I participated in one year of probation, without me being convicted in the meantime, and the charges would be dropped if I finished probation without problems (which I ultimately did) under conditions which included the government affirmatively admitting that the underlying conduct didn't occur! See the concurrently-filed "Administrative Motion for Leave to File Under Seal."[1]

3. In a related civil case for malicious prosecution, the alleged victim of that criminal charge attempted to get my lawsuit against him thrown out on the grounds that I was found guilty, when in fact, the same judge overseeing both cases acknowledged that I "neither plead guilty nor was [I] found guilty," and so the defendant's motion for summary judgment was denied. See **Exhibit A**, Page 40, Line 7 through Page 41, Line 12.

4. On February 12, 2022, Defendant Sydney Redfield posted a video to his YouTube channel dedicated to smearing me ("the smear video"). See https://www.youtube.com/watch?v=WB-Xd1qDKIY. In the smear video, beginning at timestamp 25:05, the defendant mentioned that I was charged with domestic battery in 2011, but omitted the fact that the charges were dismissed due to the prosecution having absolutely garbage evidence.

5. Prior to publishing the smear video, I contacted the defendant over private email and asked him politely to hear my side of the story privately before judging me and running my name

---

[1] Pay special attention to Page 7, Lines 18-20, where the judge says "the Court will withhold formal adjudication of guilt of the defendant," meaning I was not convicted in the meantime. Not just that my conviction would be lifted or set aside in a year's time, but that there was no conviction in the first place.

Case 4:23-cv-00321-DMR                          -1-                     Motion for Summary Judgment

through the mud. He declined to do so with no explanation given. See **Exhibit B**.

6.Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation." See **Exhibit C**.

7.After I filed this current lawsuit, the Defendant posted another video reading and commenting on the Complaint ("the lawsuit reaction video"). See See https://www.youtube.com/watch?v=3CbgDzEkkn8. When commenting on m allegations for Defamation #10 (where he accused me of being charged with the crime but omitted the exculpatory legal decision), he misread the Complaint and publicly stated that I am alleging that my conviction was overturned on appeal (see timestamp 27:31 – 28:29), when in fact, I am asserting that I was never convicted in the first place; there was nothing to appeal, and that the dismissal of charges was based on the prosecution realizing that the evidence against me was pathetically weak.

## IV: SUMMARY OF ARGUMENT

1.It is well established law that lying by omission still qualifies as lying for purposes of defamation. In the instant case, the defendant lied by omission when he failed to disclose that my charges were ultimately dropped due to the fact that the evidence was garbage. The result was to make everyone believe I was convicted of the crime.

2.Even if the defendant could come up with additional evidence that might cause a reasonable person to suspect I might still be guilty of the crime, that alone doesn't save him. Just like with Defamation #3 and his proferred "re-aggravating factor," that just means he should have disclosed *everything* – the criminal indictment, the subsequent dismissal of the charges based on the weakness of the evidence, and the new evidence which indicates I'm guilty – all in equal measure.

3.At this point, the only way the Defendant could prevail on the defense of substantial truth is if he could show evidence that not only restores belief that I might have been guilty, but which unequivocally proves I'm guilty in no uncertain terms. Then, and only then, would he be legally allowed under defamation law to omit the dismissal of my charges or the weakness of the

evidence. Since his odds of being able to do that are one in a million, the Court should enter partial summary judgment on the issue of liability.

V: ARGUMENT

1. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a).

2. There are two ways for a movant to resolve a factual dispute on summary judgment: Either show that the disputed fact is immaterial, or show that the factual dispute is not "genuine," that is, that there is nothing more than mere metaphysical doubt as to its truthfulness. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 US 574, 586 (1986) ("[T]he issue of fact must be genuine. When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). In other words, if the defendant has only a one in a million chance of being able to produce any admissible evidence to support his factual contention, summary judgment is still appropriate, even if it isn't literally impossible for him to prove it.

V-1: Defamation by omission of exculpatory legal decisions

3. Defamation by omission – that is, the legal theory that a defendant can be liable for defamation, even if everything he said was technically correct, if he omits certain mitigating factors, either with the intention, or in reckless disregard for the risk, of leaving his audience with a false impression that would not have happened had the omitted mitigating factors been stated, is still liable for defamation to the same extent as if he had outright lied directly – is indeed a valid theory for imposing liability for defamation. Although, to my knowledge, the State of Idaho has not issued any clear case law on this question, they also have not issued any case law to my knowledge that weighs against this legal theory either. Meanwhile, nearly every jurisdiction in the United States that has set precedent on this question has ruled that, yes, it is indeed a valid theory for defamation liability that the defendant lied by omission.

   (a) See Tomblin v. WCHS-TV8, 434 F. App'x 205 (4th Cir. 2011) (finding that the plaintiff stated a claim upon which relief can be granted when the news station lied by

omission by failing to disclose that the underlying sexual abuse occurred between two four-year-old boys, thereby leading audiences to believe that the daycare workers were directly and personally engaging in the sexual abuse).

(b)     See also Morse v. Fusto, 804 F.3d 538, 549 n.8 (2d Cir. 2015) ("[T]he law of libel has long recognized that omissions alone can render a statement false").

(c)     See also Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 387 (8th Cir. 1996) ("[A] defendant does not avoid liability by simply establishing the truth of the individual statement(s); rather, the defendant must also defend ... the omission of certain facts").

(d)     See also Memphis Pub. Co. v. Nichols, 569 SW 2d 412 (1978) (actionable libel found where a newspaper selectively published that the Plaintiff was with her assailant's husband, implying they were having an affair, when in fact the two were meeting with multiple other people in an entirely non-sexual setting).

(e)     See also Mohr v. Grant, 153 Wash.2d 812, 108 P. 3d 768, 776 (2005) (Washington Supreme Court holding that "In a defamation by omission case, the plaintiff must show with respect to the element of falsity that the communication left a false impression that would be contradicted by the inclusion of omitted facts," thereby acknowledging that defamation by omission is indeed a valid legal theory to recovery).

(f)     See also Diesen v. Hessburg, 437 N.W .2d 705, 709 (Minn. Ct. App. 1989) ("There may be defamation … where known facts are omitted, which could have changed the defamatory implication of the article").

4.     Even Idaho – where this case will most certainly end up once the pending Motion to Transfer Case (Dkt. 65) is granted – recognizes defamation by omission, specifically as a subset of "defamation by implication." See Verity v. USA Today, 436 P. 3d 653, 666 (2019) ("[W]e hold that defamation by implication arises" when the defendant "creates a defamatory implication by omitting facts"). If this case is ultimately transferred to Idaho, that case law becomes binding precedent, so it is especially worthy of note.

5.     In the present motion, the omitted fact is that my charges were ultimately dropped once

the prosecuting attorney had it explained to him via my pro se motion just how weak the evidence against me was. This is also a valid legal theory to prove defamation. Omitting exculpatory legal decisions has long been recognized as defamation by omission.

    (a)    See Volokh, E. (2021) "Libel by Omission of Exculpatory Legal Decisions" Notre Dame Law Review, 97(1), 351–355;

    (b)    See also Garcia v. Puccio, No. 108964/02, 2003 WL 25594218, at 10 (N.Y. Sup. Ct. Jan. 6, 2003) (reporting on complaint against plaintiff filed with the school but without mentioning "that the accusation was ultimately found to be baseless and expunged from plaintiff's teaching record" may be libelous under a "defamation by implication" theory, as not being the "substantial truth");

    (c)    See also GD v. Kenny, 15 A. 3d 300, 319 (NJ 2011) (acknowledging potential defamation in "a case in which a defendant widely publicizes that a plaintiff was charged with a criminal offense but knowingly did not mention that the charge was found to be baseless. In that circumstance, publication of the unadorned criminal charge might give rise to the false impression that the plaintiff was convicted").

    (d)    See also Wiest v. E-Fense, Inc., 356 F. Supp. 2d 604, 610 (ED VA 2005) ("It is a misleading half-truth to say that a person was convicted of a violation ... without including the fact that his conviction was overturned on appeal");

    (e)    Salzano v. NJ Media Group Inc., 993 A. 2d 778 (NJ 2010) ("[A]ccurately reporting a [many-years-old] charge of [criminal conduct] but failing, in the same article, to report the subsequent dismissal of the charge is not covered by the fair-report privilege").

    (f)    See also Martin v. Griffin, No. CV 990586133S, 2000 WL 872464, at *18 (Conn. Super. Ct. June 13, 2000) (suggesting that mentioning a felony coupled with "the omission to mention the reversal of the conviction" could be libelous);

    (g)    See also Klentzman v. Brady, 456 S.W.3d 239, 268 (Tex. App. 2014) ("The failure to report that [plaintiff] was acquitted, leaving the impression that he was guilty of the [charge mentioned in the article] was clearly more damaging to his reputation in the mind of the average reader than the truth would have been").

(h)     See also Petro-Lubricant Test v. Adelman, 184 A. 3d 457, 472 (NJ 2018) ("The fair report privilege may not protect a publication that only reprints the allegations but not the favorable verdict").

6.     Therefore, if I can prove that (A) my criminal charges were ultimately dismissed, and (B) the primary reason for said dismissal was most likely due to the prosecution realizing that the evidence against me was pathetically weak, then defendant Sydney Redfield is guilty of slander when he failed to mention that dismissal.

### V-2: It is undisputed that the defendant omitted my charges being dropped from his smear video.

7.     A cursory review of the smear video clearly shows that he did not mention the fact that my charges were dismissed. Even in his lawsuit reaction video, he never concedes that the charges were dismissed, instead doubling down on his insistence that I was convicted, but only that I allege that my conviction was overturned on appeal, which, as you can see from the undisputed evidence, is clearly not the case. Rather, I was never convicted in the first place; there was nothing to appeal.

8.     Even if the Defendant could come forward with affirmative evidence that would cause a reasonable person to suspect that I am still guilty of the crime despite my acquittal, and therefore deserve to receive the "OJ Simpson treatment" (where I am branded by the public as a criminal the same as if I had been convicted), that still wouldn't save him in the instant case. As I explain in the concurrently-filed "Motion for Partial Summary Judgment on the Issue of Liability for Defamation #3," all that means is that he had a duty, under defamation law, to disclose *everything* in his smear video – the criminal indictment, the dismissal, and the additional evidence of guilt – all in equal measure. And since he clearly didn't do that, that means he's still liable for slander.

9.     The only way the defendant could truly avoid liability in this case on the defense of substantial truth is if he could produce affirmative evidence, not just that *suggests* I was guilty of the crime, but which incontrovertibly *proves* my guilt to the exclusion of all other facts, to the point where it is downright inconceivable that any sane person *wouldn't* decide I was guilty just on that evidence alone. An example of such evidence would be video footage of me actually

committing the crime in real time. Then and only then could the dismissal be classified as "entirely irrelevant" for purposes of defamation by omission.

10. However, the odds that the defendant will be able to provide that are one in a million. Therefore, it is not "genuinely" disputed according to the standard set forth in Matsushita.

11. If the Defendant wishes to prove that I was convicted, he has not one, but two very easy-to-pursue paths available to him. He can either...

(a) Run a formal criminal background check on me, using this form: https://humanservices.arkansas.gov/wp-content/uploads/Combined-Background-Check-Form.pdf; or

(b) Obtain a certified copy of the formal judgment of guilty from the trial court in which the charges were originally filed; not just an old, archived newspaper article acknowledging that the charges had been filed, but an actual, formal adjudication of guilt from the original court directly. According to the "best evidence rule," nothing else would be sufficient to prove that a conviction occurred. If the case hasn't been sealed, then it should still be public record, which means it shouldn't be too difficult for the defense to obtain a certified copy.

12. So far, SidAlpha has done neither of these two things. Therefore, until he provides either a criminal record from the AR Department of Human Services or a formal judgment of guilty from the trial court, then this Court should hold that SidAlpha lied by omission when he claimed I was charged with the crime but failed to properly disclose that I was never convicted thereof.

### V-3: The defendant buried his head in the sand.

13. I am not a public figure, for reasons I explained in ¶¶ 124-131 of the Complaint. However, even if the Court disagrees with me, and decides that I am a public figure, I can still prove actual malice in this case: Because the Defendant refused to hear my side of the story *privately* (the public argument we had on Twitter doesn't count) before publishing his smear video. See ¶ 7 above. This constitutes burying his head in the sand.

14. Had he given me a chance to tell my side of the story before he had made up his mind to smear me, I could have explained to him all of the stuff mentioned in this memorandum, how my charges were dropped due to a lack of evidence that should have made the prosecutor into a

laughingstock, and could have even produced the February 8 and May 13 transcripts. Instead, the defendant didn't see the need to hear my side of the story. He outright refused to entertain any evidence that might have conflicted with the judgment he had already made about me in absentia. That, however, is the very definition of "burying his head in the sand" and, therefore, actual malice.

15. It's obvious why he didn't want to hear my side of the story: Because his mind was 100% made up about me. Nothing I said was ever going to change that. Even now, reading this memorandum and being aware of all the circumstances surrounding the dismissal, he is still 100% convinced that I did it. Why? Because I'm Acerthorn, that's why. Even if I could produce incontrovertible evidence that I didn't do it (such as the alleged victim admitting on a hot mic that he had been lying the entire time, or evidence that the alleged victim's fingerprints were found on the knife but mine weren't), he still would have insisted, with his full chest, that I am guilty of that crime, simply because I'm Acerthorn.

16. However, it is axiomatic that such an attitude does not absolve him of liability for defamation. If anything, it exacerbates said liability.

### V-4: Refusal to Retract

17. Immediately after the smear video was published, we spent three days arguing over private email, where I demanded he retract his smear video, but he refused to, insisting that "it wasn't defamation." See ¶ 6 above.

18. This satisfies my legal duty to demand retraction before suing. Therefore, I am now eligible to recover general damages, such as for emotional distress and loss of reputation.

### VI: RELIEF REQUESTED

19. Upon the Court granting this motion for partial summary judgment, I hereby request the following relief:

### VI-1: Declaratory Relief

20. First, I ask that the Court declare that …

   (a) The Defendant slandered me when he publicly reported on my 2011 criminal indictment but did not disclose that those charges were dismissed due to lack of evidence;

(b)     That the Defendant acted willfully and maliciously in his reporting, either knowing his statements to be false or acting in reckless disregard to their truth; and

(c)     That this constitutes defamation per se, because he accuses me of a crime of moral turpitude.

21.     The effect of the second declaration is two-fold: First, it opens up the possibility of recovering punitive damages against the defendant. Second, it ensures that the defendant cannot discharge this judgment debt in bankruptcy, pursuant to 11 USC § 523(a)(6).

22.     Upon this declaration being issued, the only thing left to litigate, in regards to Defamation #! and #2, are damages.

### VI-2: Injunctive Relief

23.     I then ask the Court to issue the following injunctions against the Defendant:

#### VI-2-A: Injunction #1: Remove defamatory content

24.     First, he should be ordered to remove any/all references to my criminal charges from his YouTube channel and all other social media accounts.

25.     Before that happens, however, I respectfully ask that the Court download1 a copy of the smear and lawsuit reaction videos, and state in its order that it has done so, as they are certainly relevant evidence for the other counts of defamation that don't currently have motions for partial summary judgment pending about them.

#### VI-2-B: Injunction #2: Repair my reputation

26.     I then ask that the defendant be ordered to publicly correct the statements he made about me in such a way that ensures that my reputation is fully restored. He should not be required simply to tell everyone that he was wrong, but to *actually convince them*, to the point where literally everyone on Earth, with no exceptions, has either never heard of this controversy in the first place, or their must subjectively believe that I am the blameless victim of harassment, doxxing, and defamation (and that SidAlpha willingly and maliciously participated in same), and absolutely nothing else.

27.     If that sounds impossible, it isn't. It may be difficult, and it may be expensive, but it can be done. It has happened before. The most prolific example of this sort of "reputation repair" (for

lack of a better term) is the highly controversial case of Liebeck v. McDonald's in New Mexico. For years and years during the 1990s and 2000s, Ms. Liebeck was treated as nothing more than a greedy plaintiff who sued McDonald's over the pettiest of torts, suing for millions of dollars for what should have been only a couple hundred bucks in actual damages. But nowadays, the record has been set completely straight. Nowadays, you almost never hear the original "smear" story unless it is specifically setting up to explain how that original story was false.

28.    The same is possible here. It may take a long time for the defendant to do it, but that just means he'd better get started. Distributing the message may be expensive1, but that alone doesn't excuse legal obligations. If it did, debtors would be able to get out of paying off their debts simply because they lost their jobs. I'm not talking about being judgment proof; I'm talking about the Court officially recognizing that the debtor is absolved of his official duty to repay the debt, to such a degree that, even if the debtor got a job in the future, the creditor still wouldn't be able to garnish his wages because judgment was officially in the debtor's favor. Obviously, that would be absurd, and the Court should hold likewise here.

VI-2-C: Injunction #3: Cause harassment to stop

29.    Last but not least, I ask that SidAlpha be ordered to personally and by any means necessary bring about an end to any/all harassment made against me. Again, I am not asking that he merely be ordered to post a video telling his viewers not to harass me, but to personally ensure, under his own power, that the harassment ends.

30.    If this also sounds impossible for him to do, then maybe he should have thought about that before he was publishing his knowingly false smear video about me. This is not a case of "there's nothing the defendant can do to make people leave the plaintiff alone," because there was something he could have done: He could have simply not posted the smear video in the first place! At this point, he has made his bed and now he should be made to lie in it.

VI-2-D: How violations of injunctions should be identified.

31.    In practice, the primary means through which the second and third injunctions would manifest would be to hold SidAlpha in contempt of court (complete with fines payable to me and coercive confinement) every time someone else harasses me, or posts any defamatory material

about me, in connection with this controversy. After all, if someone continues to harass me, that is clearly evidence that SidAlpha has not fully complied with the injunctions to convince everyone that I'm the blameless victim and get everyone to stop harassing me, is it not?

32.    Unrelated defamation and harassment should also constitute a violation of these injunctions, as long as it is clear that the other party is only creating these new accusations against me as a substitute for the old accusations they are no longer allowed to spread. In other words, if someone were to realize that they could not continue this exact line of defamation, but still believes that I am a scumbag, so they come up with something else, no matter how out-of-the-blue it may be, to continue to harass me and claim that it's unrelated, the Defendant should still be held in contempt of court for that.

33.    If the contempt is punishable by fine, then those fines should be payable to me, rather than to the court. After all, the whole point of these injunctions is to put an end to the harm being inflicted on me. Therefore, I should be the one compensated for the harm that is continued to be inflicted on me.

### VI-3: Other Relief

34.    I then ask that the Court award me whatever other relief which it considers necessary to make me whole in this case.

### VII: CONCLUSION

35.    Wherefore, premises considered, I respectfully pray that this Motion for Partial Summary Judgment on the Issue of Liability for Defamation #10 be granted, and for any other relief to which I may be entitled.

So requested on this, the 30th day of September, 2025.

*/s/ David Stebbins*
David Stebbins (pro se)
