David Stebbins          123 W. Ridge Ave., APT D, Harrison, AR 72601

(870) 204-6516          acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                              PLAINTIFF

VS.                          Case 4:23-cv-00321-MMC

SYDNEY REDFIELD, d.b.a. SIDALPHA                    DEFENDANTS

## SECOND MOTION FOR ISSUANCE OF SUBPOENA DUCES TECUM

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Second Motion for Issuance of Supboena Duces Tecum in the above-styled action.

### Incorporation of prior materials

For the sake of keeping it simple, I hereby incorporate by reference all of the arguments and facts contained in Dkt. 118 (original Motion for Issuance of Subpoena Duces Tecum) and Dkt. 127 (Supplement to same). That way, this second motion will be focused entirely on the grounds stated by the Court in Dkt. 131 for why that motion was denied.

However, I will, at a minimum, update the sample subpoenas to include new due dates to accommodate the fact that the Court is a few weeks later than I expected in issuing them. These sample subpoenas are hereby attached as **Exhibit A** through **Exhibit E**.

I will now address, in turn, each of the factors the Court considered relevant when it denied without prejudice my original subpoena motion:

### Relevance of the Information Sought

First of all, as I explained in the Supplement to the first motion (Dkt. 127), the parties are in agreement that Creetosis, InitiativeKookie, and Rogue Internet Man are relevant witnesses whose legal names and addresse are unknown. That alone should negate the Court's discretion to decide that they are not relevant witnesses.

Barring that, here is a breakdown of what relevant testimony each of the aforementioned witnesses may have personal knowledge of:

<u>Upper Eschelon and SomeOrdinaryGamers have personal knowledge of whether the accusation mentioned in ¶ 91 of the Complaint is a reasonable interpretation of the Defendant's smear video.</u>

In ¶ 91 of the Complaint, I alleged, for Count of Defamation #6, that the Defendant accused me of suing literally everyone on earth, for literally any reason, no matter how big or small.

My primary theory for liability, regarding this count of defamation, is "defamation by implication." Issa v. Applegate, 31 Cal. App. 5th 689 (2019) provides the leading case law in California on the issue of defamation by implication (even being directly cited as controlling authority in CACI No. 1707 of the state's model jury instructions). Issa states in pertinent part...

"In determining whether a statement is libelous we look to what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the communication. If the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or otherwise creates a defamatory implication, he may be held responsible for the defamatory implication, even though the particular facts are correct. The pertinent question is whether a reasonable fact finder could conclude that the statements as a whole, or any of its parts, directly made or sufficiently implied a false assertion of defamatory fact that tended to injure plaintiff's reputation." See id at 703 (cleaned up).

So I can recover for defamation by implication as long as I can prove that the underlying defamatory implication was reasonable.

Well, in this case, I intend to prove that by proving that other people (such as, but not limited to, Upper Eschelon and SomeOrdinaryGamers) did indeed take that very defamatory inference from the Defendant's smear video! It's kinda hard to deny that the implication is reasonable if people are literally taking that every inference, isn't it?

My reason for believing that these two witnesses took that specific defamatory inference from the smear video is the fact that they both published their own YouTube videos, both explicitly (not implying, but explicitly and unequivocally) stating that I will sue "everyone." Both witnesses used the exact word "everyone" in the titles of their videos, and very early on in their respective videos, they directly credited SidAlpha's smear video about me as their primary source that they were drawing from.

The videos in question can be found at the following URLs:

- For SomeOrdinaryGamers, the url of https://www.youtube.com/watch?v=6jabN-7C-7A. At timestamp 4:27 is when he directly credits SidAlpha's smear video as his primary source.
- For Upper Eschelon, the url of https://www.youtube.com/watch?v=CsvP8mY13VI. At timestamp 0:19 is when he directly credits SidAlpha's smear video as his primary source.

I could theoretically just introduce those two videos into evidence. But that would, at least arguably, be hearsay (even if there's a good chance that at least one of the many exceptions will apply). It's best if we have the two authors of those videos as witnesses so we don't even have to fight that battle at all.

Creetosis, InitiativeKookie, and Rogue Internet Man all have personal knowledge of whether the smear campaign against me (including the Defendant's smear video) was malicious and deisgned solely to harass, as well as whether they deliberately misinformed the Defendant in order to make his smear video as false as possible.

These are three people who participated in the smear campaign against me, seeking to inflict upon me as much pain and misery as humanly possible. When I started standing up to them, they pretended to be the victims in a manner I described in ¶¶ 105-108 of the Complaint (describing how reactive abuse works) and reached out to SidAlpha to create a smear video about me because he "has a platform" and can "spread the message" better than they could. They then proceeded to feed the Defendant a highly cherry-picked story that left out all the facts that didn't support their narrative in order to convince the Defendant that I was the villain rather than the victim.

This is all relevant – even invaluable – testimony, because it proves that the Defendant's informants who helped him create the smear video are 100% malicious. This, in turn, means that the Defendant is guilty of actual malice as well unless he can show that he was objectively reasonable in refusing to hear my side of the story before publishing the smear video (and he's probably still guilty of actual malice regardless).

Their testimony is also relevant to proving that Defamation #7, #8, and #9 (¶¶ 97-114 of the Complaint) are all false. Yes, I was aggressive and disrespectful *to them*, but only because

they had gone out of their way to push me over the edge. That doesn't mean that I, generally speaking, am just some overly toxic and bitter man who sees any disagreement with me as harassment, which is what the Defendant portrayed me as in the smear video.

Even beyond Defamation #7, #8, and #9, these witnesses' testimony can extend to all ten claims of defamation, because again, they fed the Defendant a highly cherry-picked narrative that intentionally left out exculpatory details. This highly-cherry-picked narrative found its way, in some capacity, into everything the Defendant said about me in the smear video, affecting all ten counts of defamation to varying degrees.

Therefore, these witnesses' testimony are indeed highly relevant.

**The burden on Alphabet is nominal.**

Next, the Court ordered me to address "the burden and expense to the non-party in providing the requested information." Here, the burden is so nominal that it would honestly cost them more to simply draft the cover letter responding to the subpoena than it would be for them to gather the requested information in the first instance.

Remember that, with the sole exception of InitiativeKookie, all other witnesses who I am seeking to subpoena in this case are members of the YouTube Partner Program. This means that they are eligible to receive ad revenue from their videos. This, in turn, means that Alphabet necessarily has their legal names and addresses on file for tax purposes, and so those individuals can get paid pursuant to their partnership. All Alphabet will have to do is pull up the records they already have, make copies of them, and send them to me.

As for InitiativeKookie, it's a little more complicated. He is not a member of the YouTube Partner Program, so it is not a foregone conclusion that Alphabet will have his legal name and address on file. However, they almost certainly will have (1) his IP addresses, (2) his email addresses associated with his accounts, and (3) the phone numbers he used to perform 2-factor authentication for those accounts. From there, I can probably use a service like Spokeo or BeenVerified to track down his legal name and address, just like I did with SkibbidyViddity over in the Delaware case. See Case 1:24-cv-01173 (Stebbins v. Doe) in the US District Court for the District of Deleware, Dkt. 11.

That, however, will be my burden. For Alphabet, all I'm asking is that they hand over the IP addresses and other potentially useful data that *they already have on file*. If they don't already have it, I'm not asking that this Court subpoena them to go and get it for me. Therefore, for purposes of discussing the purported "burden and expense to the non-party," Alphabet's burden here is just as nominal as it is with the four witnesses who are already part of the YouTube Partner Program.

**Alphabet is probably the only company that has the identities of all of these witnesses.**

Nobody else likely has the legal names or addresses of all of these witnesses. Moreover, since the vast majority of them used their YouTube accounts to torment me, it's only fitting that Alphabet should be the one to tell me who they are.

At a minimum, neither of the parties know who these five witnesses are. As I explained in Dkt. 127 (Supplement to original motion), the Defendant's 26(a) initial disclosures listed InitiativeKookie, Creetosis, and Rogue Internet Man as relevant witnesses despite not knowing their names or addresses. Therefore, their identities *have* to come from a third party, one way or another.

The only witness of these five who the Defendant even has a chance of knowing the identity of himself is Upper Eschelon. At timestamp 0:19 of his video above, he states that he considers SidAlpha a close personal friend. When I file this motion, I will show this paragraph to the Defense Counsel and invite him to explicitly state, in his response to this motion, if his client does in fact already know the identity of that specific individual, and intends to disclose it when he finally gives his belated response to my first batch of discovery requests. If he responds and explicitly states that Upper Eschelon's name, address, phone number, and email address will be disclosed, I will withdraw that portion of this motion.

But for everyone else, we either subpoena Alphabet Inc., or we can't use these witnesses at all.

### Privacy Concerns of De-Anonymizing Users

Last but not least, the Court advised me to bear in mind the First Amendment and privacy concerns that come with de-anonymizing users on the Internet. This is one of the most infuriating

things about me filing all these cases, because it keeps coming up despite being repeatedly debunked.

To get started in doing legal research on this topic, I began by doing a Google AI Overview search (don't worry, this is just the start of my legal research). I exported the search into Google Docs so it wouldn't be automatically deleted after 10 days, and you can view that archive here by going to the following URL:

docs.google.com/document/d/1H6dnZFvNoUOhVg9ARgzuKmv1VaJQxsebVN24bZFtQuk

As you can see, the Overview lists six exceptions to the right to anonymous online speech, three of which the applicability to the instant case should be immediately obvious: Defamation, harassment/cyberstalking, and intellectual property violations. I have been trying to explain _**for years**_ to the judges of this District that I am the victim of all of these things, and yet they still insist that my harassers' right to be anonymous on the Internet overrides my right to not be harsassed. It's infuriating.

Now sure, Google AI Overview isn't binding precedent. But it's backed by such sources as the website of SJKP Law Firm LLP. Lawyers' websites are typically reliable sources right?

At the webpage of https://www.daeryunlaw.com/us/practices/detail/cyberbullying, it discusses in depth the cyberbullying exception to anonymous online speech. Regarding obtaining the perp's identity through Doe subpoenas, they write "Courts balance the plaintiff's right to identify their harasser against the defendant's First Amendment right to anonymous speech, applying tests that require the plaintiff to demonstrate a prima facie valid cause of action before the anonymous speaker's identity is disclosed."

At least with InitiativeKookie, I've already shown extensive evidence proving that he has engaged in a longstanding pattern of hate and harassment against me. See Dkt. 71-5 in this case, where I provide literally scores of examples where InitiativeKookie has created mutliple accounts on YouTube, Discord, Reddit, and Twitch in order to level literally hundreds of unprovoked harassing messages at me.

And there's also the fact that he was an informant of the Defendant in this case. As I said above, these witnesses all...

"participated in the smear campaign against me, seeking to inflict upon me as much pain and misery as humanly possible. When I started standing up to them, they pretended to be the victims in a manner I described in ¶¶ 105-108 of the Complaint (describing how reactive abuse works) and reached out to SidAlpha to create a smear video about me because he "has a platform" and can "spread the message" better than they could. They then proceeded to feed the Defendant a highly cherry-picked story that left out all the facts that didn't support their narrative in order to convince the Defendant that I was the villain rather than the victim."

All of this justifies stripping them of their precious anonymity, and forcing them to be held accountable for their acts. So to say the very least, I have certainly demonstrated a prima facie valid cause of action.

Possible Safeguard

The Court encouraged me to suggest a possible safeguard, so here is one. There is perhaps a way we can each get the best of both worlds: I can get my testimony to help prove my defamation claim against Redfield, and the witnesses I need can all stay anonymous.

Whenever Alphabet is served with a subpoena duces tecum to identify one of their users, it is typically their policy to notify the subject of the subpoena and give that person a chance to move to quash or otherwise contest the subpoena. See **Exhibit F**.

Well, in addition to moving to quash, perhaps the Court could also offer them the chance to...

1. Submit proof of their identity (including notarized signature) to the Court in camera. That way, they can still be held in contempt of court if it comes to that.

2. Agree to testify – both at their depositions and at trial – without needing to be subpoenaed to either, and can simply identify as their YouTube aliases rather than their legal names. If they insist on being subpoenaed, then I need their names and addresses and there's simply no two ways about it.

3. At the start of the deposition, prove that they are the YouTube users who I listed in Exhibits A-E of this motion by using Zoom's "screen share" ability to show their monitors, and then, on a private window (where they will be automatically logged out of all accounts), they show themselves logging into their YouTube account and, on their

webcam, using their smartphones to perform 2-factor authentication, thereby proving to YouTube's satisfaction (and therefore to mine) that they are indeed the owners and operators of those respective YouTube accounts.

And...

4.  Understand and agree that, if they do not cooperate in good faith with either the depositions or their trial testimony, they will be held in contempt of court and their identities which they previously surrendered in camera would then be exposed in the Court record.

This gives everyone the best of both worlds. I get my testimony, and they get to keep their anonymity. It's a win-win.

## Conclusion

I have now addressed everything the Court previously listed as reasons for denying the previous motion. If, after all of this, the Court still has reservations about issuing the subpoenas, then I respectfully ask that it hold a zoom hearing on this motion and ask me those questions live, rather than deny without prejudice again and make me go through this process a third time.

Wherefore, premises considered, I respectfully pray that this Second Motion for Issuance of Supboena Duces Tecum be granted.

So requested on this, the 4th day of June, 2026.

*/s/ David Stebbins*
David Stebbins (pro se)