Exhibit 2 - ORDER ENTERED BY HON. TIMOTHY L BROOKS
DOCKET 169 - 3/30/2015 - Stebbins vs. Boone Cty, AR

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## HARRISON DIVISION

**DAVID STEBBINS**                                                                          **PLAINTIFF**

**v.**                                    **Case No. 3:12-CV-03022**

**BOONE COUNTY, ARKANSAS**
**and SHERIFF DANNY HICKMAN**                                          **DEFENDANTS**

## <u>OPINION AND ORDER</u>

Currently before the Court is the Report and Recommendation ("R & R") (Doc. 162) of the Honorable James R. Marschewski, United States Magistrate for the Western District of Arkansas, filed in this case on July 11, 2014.[1]  Judge Marschewski held an evidentiary hearing in this case on April 22-23, 2014, in order to determine which, if any, issues in this case were triable to a jury.  Thirteen witnesses were called during the hearing, including Plaintiff David Stebbins and Defendant Sheriff Danny Hickman.  Following the submission of the R & R by the Magistrate, Mr. Stebbins filed 40 pages of objections on July 25, 2014 (Doc. 165).  The Court has reviewed the entire record in this case *de novo*, pursuant to 28 U.S.C. § 636(b)(1), including the Complaint, the Amended Complaint, the Answer, the R & R, and Mr. Stebbins' objections.

Mr. Stebbins generally contends that Judge Marschewski made and relied upon certain credibility determinations concerning witnesses who testified at the two-day

---

[1]Mr. Stebbins attempted to appeal the Magistrate's R & R immediately after it was filed, and prior to the conclusion of the 14-day objections period.  *See* Doc. 163.  The Eighth Circuit's Judgment and Mandate were issued on August 25, 2014, denying Mr. Stebbins leave to proceed *in forma pauperis*.  On December 4, 2014, Mr. Stebbins filed a petition for writ of *certiorari* with the United States Supreme Court, which was denied on February 10, 2015.

evidentiary hearing. (Doc. 165, pp. 4-5). Although no written transcript of the hearing was created, the Court was provided with an audio recording of the proceedings, which the Court reviewed for purposes of making independent determinations as to the evidence presented. *Accord Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990) (finding that *de novo* review of a magistrate's evidentiary hearing requires district court to read full transcript or other verbatim record of proceedings).

While the Eighth Circuit has approved the use of a pretrial evidentiary hearing to assist in a court's preliminary review of a *pro se* inmate's 42 U.S.C. § 1983 claims, the Court of Appeals has "stressed that such a hearing must be consistent with the plaintiff's right to a jury trial." *Hobbs v. Lockhart*, 46 F.3d 864, 868 (8th Cir. 1995). "Even if both sides present evidence, so that the procedure resembles a summary judgment motion with live evidence, the standard remains the same—'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Bi-State Justice Ctr.*, 12 F.3d 133, 135 (8th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "In either case, the court must apply the proper standard of proof, avoid credibility determinations, believe the inmate's evidence, and draw all justifiable inferences in the inmate's favor." *Id. (*citing *Anderson*, 477 U.S. at 255).

Despite resolving all factual disputes in Mr. Stebbins' favor, the Court finds after consideration of the written record and the recording of the evidentiary hearing that Mr. Stebbins' objections offer neither law nor fact requiring deviation from the Magistrate's recommendations. Accordingly, the R & R (Doc. 162) will be **ADOPTED**. Below, the Court

addresses each of Mr. Stebbins' specific objections to the R & R and explains why his claims fail as a matter of law.

## I.   OBJECTION ONE: MAGISTRATE'S BIAS

Mr. Stebbins' first objection to the R & R is that Judge Marschewski "has repeatedly demonstrated that he hates Petitioner's guts and wants Petitioner out of his hair." (Doc. 165, p. 2).[2]   Mr. Stebbins accuses the Magistrate of "repeatedly tak[ing] forever to rule on simple motions . . . mak[ing] up defenses . . . that the opposing parties never raised . . . completely ignor[ing] . . . various legal arguments that Plaintiff cites to support his claims . . . [and] [a]t the evidence hearing, he would repeatedly hold Plaintiff to blatant double standards." *Id.* at p. 2.

Having reviewed the complete record in this case, including the recording of the evidentiary hearing, the Court finds Mr. Stebbins' objection as to the Magistrate's bias to be without merit.   Accordingly, the Court will turn to Mr. Stebbins' substantive objections

## II.   OBJECTION TWO:  DISMISSAL OF AMERICANS WITH DISABILITIES ACT ("ADA") CLAIMS

The Magistrate recommends that Mr. Stebbins' ADA-related claims be dismissed

---

[2] The Court also observes here that Mr. Stebbins' objections to the R & R are littered with wholly inappropriate personal attacks against the Magistrate.  *See, e.g.*, Doc. 165, pp. 38-39 ("*LET'S SAY THIS, ONE MORE TIME, JUST IN CASE It DID NOT SINK IN: THE MAGISTRATE JUDGE IS A FILTHY LIAR, FRIVOLOUSLY CLAIMING THAT PLAINTIFF HAS NOT SHOWN 'ANY EVIDENCE,' WHEN HE VERY CLEARLY HAS!   JUST BECAUSE THE MAGIS-TRATE* [sic] *JUDGE MADE THE CONSCIOUS CHOICE TO NOT INCLUDE IT IN HIS REPROT* [sic] *DOES NOT MEAN PLAINTIFF DID NOT PRODUCE IT! THE MAGISTRATE JUDGE IS SIMPLY A LIAR!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!*").  As the instant Opinion and Order dismisses this case with prejudice, the Court will not take the time to address Mr. Stebbins' improper tone and language here; however, Mr. Stebbins is admonished that if he chooses to appear before this Court *pro se* in a future case, he will be expected to conform his pleadings to norms of decency and decorum as are expected of all *pro se* litigants.

with prejudice.  It appears from the face of the Complaint that Mr. Stebbins believes certain jail personnel knew he had Asperger Syndrome, a developmental disorder, but "failed to accommodate it." (Doc. 1, p. 2).  He sets forth numerous examples of alleged abuse and harassment by jail guards, surmising that most, if not all of these anecdotes, illustrate illegal discrimination or retaliation against him due to his disability.  In one example, (Doc. 1, p. 16, "Example #409"), Mr. Stebbins recounts being booked into the Boone County Detention Center ("BCDC") and informing the staff about his Asperger Syndrome at that time.  He suggests that when he told the staff about his condition, he was then "entitle[d] to reasonable accommodations."  *Id.*  He goes on to explain that his particular manifestation of Asperger Syndrome makes him "tactless" and given to rule-breaking behavior.  He states, however, that "but for the disability," he would not break prison rules. *Id.*  He concludes by suggesting that jail personnel should have accommodated his disability by "being patient and understanding," "not punishing him for breaking a rule," and giving him "a good bit of leeway."  *Id.*

As an initial matter, the Court observes that the Complaint's description of the nature of Mr. Stebbins' particular disability and the ADA claims related thereto are confusing and unclear.  It appears to the Court, therefore, that at least one of the purposes of the two-day evidentiary hearing was to enable the Magistrate to parse through these dozens of claims and determine which set forth a prima facie case for disability discrimination, and which did not.

The Court's own review of the Complaint (Doc.1) indicates that while Mr. Stebbins was incarcerated for a 45-day period at the BCDC, he was subjected to treatment he characterizes as "harassment" or "punishment" at the hands of jail personnel due to his

-4-

disability. In his Amended Complaint (Doc. 6), he characterizes some incidents as "terroristic threats." *See* Doc. 6, p. 1. The Court will not undertake an exhaustive recounting of each of these incidents but observes generally that not every physical or mental condition qualifies for protection pursuant to the ADA.

The ADA's enabling statute at 42 U.S.C. § 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." According to the Supreme Court's decision in *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998), the ADA applies to services and programs provided to inmates at correctional facilities. Therefore, "[t]o state a prima facie claim under the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999). "Defendants may demonstrate as an affirmative defense that a requested accommodation would constitute an undue burden." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998).

First, it is unclear to the Court whether Mr. Stebbins' Asperger Syndrome constitutes a disability under the ADA. The National Institute of Neurological Disorders and Stroke defines Asperger Syndrome as an autism spectrum disorder characterized by repetitive routines or rituals, peculiarities in speech and language, socially and emotionally inappropriate behavior and the inability to interact successfully with peers, problems with non-verbal communication; and clumsy and uncoordinated motor movements. *See*

*http://www.ninds.nih.gov/disorders/asperger/asperger.htm*.

Mr. Stebbins asserts that when he "was first booked into the jail, [he] informed the staff about [his] Aspergers," and "[t]they accepted that [he] has it." (Doc. 1, p. 16). As Asperger Syndrome is a spectrum disorder that manifests itself differently from person to person, it is not clear whether Mr. Stebbins' particular disorder impacts a major life activity such that it qualifies for protection under the ADA, nor is it clear whether jail officials understood the nature of Mr. Stebbins' particular form of Asperger Syndrome and the sorts of accommodations he desired.

Assuming without deciding that Mr. Stebbins' condition is, in fact, covered by the ADA, Mr. Stebbins states that he requested accommodation in the form of his jailors "being patient and understanding" and "not punishing him for breaking a rule." *Id.* Even if the Court were to assume that BCDC staff were aware of Mr. Stebbins' condition and these particular requests for accommodations, the Court finds that they are inherently unreasonable in the jail setting. Allowing Mr. Stebbins to break rules does not afford the BCDC the ability to achieve its overarching goals of securing prisoner safety and maintaining order. Mr. Stebbins states that he was mistreated or treated unfairly while housed at the BCDC and then claims in conclusory fashion that his disability was the cause of this maltreatment. Setting aside whether any of these incidents are tantamount to exclusion from or deprivation of the benefits of jail services normally available to every inmate, Mr. Stebbins has not presented any facts to show a causal link between his claimed disability and his treatment by jail personnel at the BCDC. He has therefore failed to establish as a matter of law a prima facie case for ADA discrimination, even assuming all facts in his Complaint occurred just as he stated.

-6-

The incidents of harassment, abuse, or poor treatment at the hands of inmates, if such incidents were causally connected to Mr. Stebbins' Asperger Syndrome, were addressed by BCDC personnel, as the Magistrate noted in the R & R. Mr. Stebbins admits he was moved multiple times to different jail cells within the BCDC during his incarceration, apparently in response to verbal altercations or threats involving Mr. Stebbins and other inmates. To the extent Mr. Stebbins' developmental disorder caused him to have difficulties in engaging in social interactions with other inmates or to become a target for abuse or harassment by other inmates, the Court finds—and Mr. Stebbins concedes—that BCDC officials were not deliberately indifferent to his concerns and in fact moved him to different cells or cell blocks a total or six or seven times. The Court agrees with the Magistrate that there is no evidence—and indeed Mr. Stebbins does not maintain—that he directly asked for other reasonable accommodations.

Considering the reasoning above and in the R & R, all ADA claims made by Mr. Stebbins are **DISMISSED WITH PREJUDICE** for failure to state a claim.

### III. OBJECTION THREE: FALSE ARREST

Next, Mr. Stebbins objects that his false arrest claim was never discussed by the Magistrate in the R & R and is meritorious. Mr. Stebbins contends that Boone County has a custom or policy of arresting citizens without probable cause in retaliation for engaging in statutorily protected activity—namely, in Mr. Stebbins' case, for filing a large number of civil lawsuits against county officials. Mr. Stebbins was arrested and ultimately convicted on a charge of domestic battery for stabbing his father in the face with a kitchen knife.[3]

---

[3] The Magistrate noted in the R & R that "the record was left open to allow Stebbins to submit a copy of the court order setting aside or expunging his conviction of a battery

-7-

Mr. Stebbins' own recounting of the incident is that his father inflicted the knife wounds on himself ("the cuts had to be slow and careful, rather than the result of a malicious knife attack"), and the arresting officer "never bothered to consider the small amount of blood, the lack of severity of the cuts . . . or a potential affirmative defense that [Mr. Stebbins] brought to his attention." (Doc. 1, p. 3). Mr. Stebbins' mother, Rita Stebbins, testified at the evidentiary hearing that after the altercation in question, there was blood on the wall, the carpet, and on a pillow. (Doc. 162, p. 16).

Mr. Stebbins contends that his arrest on these charges violated his constitutional rights because the charges were false. He claims his father and the arresting officer were friends before the arrest and posits that the arresting officer "already hated Plaintiff prior to the arrest" and "had personal interests in getting Plaintiff arrested: Because Wes Bradford [the county prosecuting attorney] told them to. Perhaps they were even blackmailed." (Doc. 165, p. 33). Mr. Stebbins also accuses the arresting officer of failing to seize "potentially exculpatory evidence" during the arrest in the form of the bloody pillow. *Id.* at p. 22.

It is important to begin the analysis of this claim by noting that the only Defendants in this case are Sheriff Hickman, in his official capacity only, and Boone County. Mr. Stebbins did not sue the arresting officer nor did he sue the County's prosecuting attorney. As all official-capacity claims against Sheriff Hickman "are equivalent to claims against the entity for which [he] work[s]; they require proof that a policy or custom of the entity violated

offense." (Dco. 162, p. 2). To date, no court order has been submitted to demonstrate that this conviction was set aside or expunged; therefore, the Court will assume that the conviction stands.

the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Gorman*, 152 F.3d at 914 (citation omitted). Therefore, in order for any claim for false arrest claim pursuant to § 1983 to survive as a matter of law, it is incumbent on Mr. Stebbins to allege facts sufficient to show that Boone County had a policy or custom of violating its citizens' rights by engaging in arrests for purely retaliatory purposes, and without probable cause.

After a careful reading of the record, the Court finds that Mr. Stebbins has failed to present anything more than his personal speculation as to the "true" reasons why he was arrested. Even if the Court were to assume that the arresting officer and County officials maintained a personal vendetta against Mr. Stebbins, the fact remains that an actual injured victim was present at the time of arrest, and there was evidence of blood in the home. Mr. Stebbins was ultimately convicted of the offense. Accordingly, the Court cannot find that there is any evidence of a policy or custom of Boone County that violated Mr. Stebbins' rights with respect to this arrest. This claim is therefore **DISMISSED WITH PREJUDICE**.

### IV.  OBJECTION FOUR:  EIGHTH AMENDMENT CLAIMS

Finally, Mr. Stebbins contends that his Eighth Amendment rights were violated during his incarceration at the BCDC due to harassment or maltreatment at the hands of jailors and inmates, and that Defendants are therefore subject to liability pursuant to §1983. The Court, having reviewed the record *de novo*, concurs with the Magistrate that there are no incidents recounted by Mr. Stebbins, even if each is taken as true, that rise to the level of a constitutional violation and create an issue of fact triable to a jury. Further,

the record does not reflect any evidence of a custom or policy by Boone County of violating Mr. Stebbins' or any other prisoners' Eighth Amendment rights.  A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

In order to establish a constitutional violation pursuant to the Eighth Amendment due to the imposition of cruel and unusual punishment, the actions taken by jail officials must deprive the inmate of "the minimal civilized measure of life's necessities" and reflect a "state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).  A county may only be held liable pursuant to § 1983 for the unconstitutional acts of its officials when there is a causal connection between a county policy or custom and the alleged unconstitutional act.  *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).  Even assuming that Mr. Stebbins' constitutional rights were violated by some discrete act undertaken by jail guards, the Court finds that Mr. Stebbins has not pleaded that jail employees were acting in accordance with any official or unofficial County policy or custom.  Defendants are, therefore, entitled to judgment on the pleadings on Mr. Stebbins' Eighth Amendment claims of harassment or mistreatment, and these claims are **DISMISSED WITH PREJUDICE**.

## V.  CONCLUSION

For all the reasons set forth above, **IT IS ORDERED** that the Report and Recommendation (Doc. 162) is **ADOPTED**.  This case is **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**, pursuant to 42 U.S.C. § 1997e(c)(1).  Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** this _30th_ day of March, 2015.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE